## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
|   |   |   |
|---|---|---|
| In re | : | **Chapter 11** |
|   | : |   |
| **COLDWATER CREEK INC.,** *et al.,*[1] | : | **Case No.  14-10867 (BLS)** |
|   | : |   |
| Debtors. | : | **(Jointly Administered)** |
|   | : |   |
|   | : | Ref. Docket No. 12 |

------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING
## POSTPETITION FINANCING, (II) GRANTING LIENS AND
## PROVIDING SUPER PRIORITY ADMINISTRATIVE EXPENSE
## PRIORITY, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING
## ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS,
## (V) MODIFYING THE AUTOMATIC STAY AND (VI) SCHEDULING
## A FINAL HEARING

Upon the motion (the "*Motion*")[2] of Coldwater Creek Inc., on behalf of itself and

its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the

"*Debtors*"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*") and in accordance with Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule

4001-2 of the Local Rules (the "*Local Rules*") of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (this "*Court*"), in these chapter 11 cases (the

"*Chapter 11 Cases*"), for entry of an interim order (this "*Interim Order*"), granting the following

relief on an interim basis:

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are:  Coldwater Creek Inc. (9266), Coldwater Creek U.S. Inc. (8831), Aspenwood Advertising, Inc. (7427), Coldwater Creek The Spa Inc. (7592), CWC Rewards Inc. (5382), Coldwater Creek Merchandising & Logistics Inc. (3904) and Coldwater Creek Sourcing Inc. (8530).  Debtor CWC Sourcing LLC has the following Idaho organizational identification number:  W38677.  The Debtors' corporate headquarters is located at One Coldwater Creek Drive, Sandpoint, Idaho  83864.

**(I)    Interim DIP Financing**

(A)    Authorizing the Debtors to obtain $75,000,000 in post-petition financing, pursuant to that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented, the "*DIP Credit Agreement*"), substantially in the form attached here to as *Exhibit "I,"* by and between the Debtors, as borrowers, and Wells Fargo Bank, National Association ("*Wells Fargo*"), as lender (the "*DIP Lender*"), which may be used for the following:

(i)    funding the Debtors' day-to-day operations and working capital needs; and

(ii)    upon entry of the Final Order (defined below), a roll-up of all outstanding prepetition amounts under the Prepetition ABL Credit Agreement (defined below);

(B)    Approval of the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("*UCC*") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "*DIP Financing Agreements*");

(C)    Granting the DIP Lender the following Liens (defined in section 101(37) of the Bankruptcy Code) and claims:

(i)    first priority priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (defined below) and the Permitted Prior Liens (as defined below), upon substantially all of the Debtors' real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Agreements; and

(ii)    a superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "*DIP Obligations*"), subject to the Carve Out as provided herein;

---

[2]    Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreements (defined below).

(II)    **Interim Use of Cash Collateral** – Authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("***Cash Collateral***"), in which the Prepetition Lender (defined below) has an interest;

(III)    **Adequate Protection** – Granting certain adequate protection, including, among other things, Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to (A) Wells Fargo Bank, National Association, as lender (the "***Prepetition ABL Lender***") under that certain Amended and Restated Credit Agreement dated May 16, 2011 (as amended and in effect, the "***Prepetition ABL Credit Agreement***") by and among the Debtors, the Prepetition ABL Lender, and Wells Fargo Bank, National Association, in its respective capacities as administrative agent and collateral agent (the "***Prepetition ABL Agent***") and (B) CC Holdings of Delaware, LLC - Series A and CC Holdings of Delaware, LLC - Series B as lenders (the "***Prepetition Term Loan Lenders***" and, together with the Prepetition ABL Lender, the "***Prepetition Secured Lenders***") under that certain Term Loan Credit Agreement dated July 9, 2012 (as amended and in effect, the "***Prepetition Term Loan Credit Agreement***") by and among the Debtors, the Prepetition Term Loan Lenders, and CC Holdings Agency Corporation as administrative and collateral agent (the "***Prepetition Term Loan Agent***" and, together with the Prepetition ABL Agent, the "***Prepetition Agents***"), in each case, to the extent of any diminution in the value of the Prepetition Secured Lenders' interest in the Prepetition Collateral (as defined below), having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Lender, the use of Cash Collateral, subordination only to the Carve Out, and for the imposition of the automatic stay;

(IV)    **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(V)    **Waiving Any Applicable Stay** – Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order; and

(VI)    **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing.

and upon consideration of the *Declaration of James A. Bell in Support of Voluntary Petitions, First Day Motions and Applications* (the *"**First Day Declaration**"*), filed contemporaneously with the Motion; and upon the *Declaration of Agnes K. Tang in Support of Debtors' Motion for an Interim*

*Order (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Super Priority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay and (VI) Scheduling a Final Hearing* (the "***Tang Declaration***") and this Court having reviewed the Motion and held a hearing with respect to the Motion (the "***Interim Hearing***"); upon the Motion, the First Day Declaration, the Tang Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.     Procedural Findings of Fact**

      A.     **Petition Date.**   On April 11, 2014 (the "***Petition Date***"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

      B.     **Jurisdiction and Venue.**   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

      C.     **Committee Formation.**   No official committee (a "***Committee***") of unsecured creditors, equity interest holders, or other parties-in-interest has been appointed in the Chapter 11 Cases.

D.    **Notice.** The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, to certain parties-in-interest, including: (i) the Office of the United States Trustee; (ii) those creditors holding the 30 largest unsecured claims against the Debtors' estates, on a consolidated basis; (iii) counsel to Wells Fargo as the Prepetition ABL Lender and as the DIP Lender; (iv) counsel to the Prepetition Term Loan Lenders; and (v) all other secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due, proper and sufficient notice, complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2 and no other or further notice need be given.

## II.    Debtors' Acknowledgements and Agreements

E.    Without prejudice to the rights of parties-in-interest as set forth in Paragraphs 23-25 below, each of the Debtors admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E (1) through E (8) hereof shall be referred to herein as the "***Debtors' Stipulations***"):

(1)    Prepetition ABL Financing Documents. Prior to the commencement of the Chapter 11 Cases, the Debtors were parties to (A) the Prepetition ABL Credit Agreement, (B) that certain Amended and Restated Guaranty dated July 9, 2012, (C) that certain Amended and Restated Security Agreement dated July 9, 2012, (D) that certain Amended and Restated Intellectual Property Security Agreement dated July 9, 2012, and (E) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition ABL Lender, including, without limitation, the Prepetition Intercreditor Agreement (as defined herein), mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "***Prepetition ABL Financing Documents***").

(2)    Prepetition Term Loan Financing Documents. Prior to the commencement of the Chapter 11 Cases, the Debtors were parties to (A) the Prepetition

Term Loan Credit Agreement, (B) that certain Guaranty dated July 9, 2012, (C) that certain Security Agreement dated July 9, 2012, (D) that certain Intellectual Property Security Agreement dated July 9, 2012, and (E) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, including, without limitation, the Prepetition Intercreditor Agreement (as defined herein), mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "***Prepetition Term Loan Financing Documents***" and, together with the Prepetition ABL Financing Documents, the "***Prepetition Financing Documents***").

(3)    Prepetition ABL Debt Amount.  As of the Petition Date, the Debtors were liable to the Prepetition ABL Lender under the Prepetition ABL Financing Documents, on account of extensions of credit in the approximate principal amount of $27,872,598.94, plus letters of credit in the approximate stated amount of not less than $9,687,979.73, plus interest accrued and accruing (at the non-default rate set forth in the Prepetition ABL Financing Documents), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Prepetition ABL Financing Documents (collectively the "***Prepetition ABL Debt***").

(4)    Prepetition Term Loan Debt Amount.  As of the Petition Date, the Debtors were liable to the Prepetition Term Loan Lenders in the total aggregate amount of $96,522,530.35, including accrued but unpaid interest at the non-default rate through April 11, 2014 (but exclusive of fees and expenses) incurred under and in connection with the Prepetition Term Loan Credit Agreement.  All obligations of the Debtors arising under the Prepetition Term Loan Credit Agreement or any other Prepetition Term Loan Financing Document, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, premiums, prepayment or yield maintenance fees (including, without limitation, the Prepayment Premium (as defined in the Prepetition Term Loan Agreement) payable under the Prepetition Term Loan Credit Agreement as a result of the acceleration of the Prepetition Term Loan Debt) charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Term Loan Financing Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders by the Debtors, of any kind or nature,

whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "***Prepetition Term Loan Debt***" and, together with the Prepetition ABL Debt, the "***Prepetition Secured Debt.***" The Debtors acknowledge that the Prepetition Term Loan Agent declared the unpaid principal amount of all outstanding Prepetition Term Loan Debt prior to the Petition Date, together with all interest accrued at the non-default rate and unpaid thereon, and all other amounts owing or payable under the Prepetition Term Loan Credit Agreement or under any other Prepetition Term Loan Financing Documents (including any Prepayment Premium) to be immediately due and payable in accordance with the Prepetition Term Loan Financing Documents.

(5)     Prepetition Collateral. To secure the Prepetition Secured Debt, each of the Debtors granted continuing security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Secured Lenders upon substantially all of its property, real and personal, including the following, all as defined in the Prepetition Financing Documents (collectively, the "***Prepetition Collateral***"):

*"Collateral" shall mean all personal property of each [of the Debtors], including, without limitation, all: (a) Accounts, (b) Chattel Paper, (c) Commercial Tort Claims (including, but not limited to, those Commercial Tort Claims listed on Schedule 3.07 to the Security Agreements), (d) Deposit Accounts, (e) Documents, (f) Equipment, (g) Fixtures, (h) General Intangibles (including Payment Intangibles), (i) Goods, (j) Instruments, (k) Inventory, (l) Investment Property, (m) Letter-of-Credit Rights, (n) Software, (o) Supporting Obligations, (p) money, policies and certificates of insurance, deposits, cash, cash equivalents, or other property, (q) all books, records, and information relating to any of the foregoing ((a) through (p)) and/or to the operation of any [of the Debtors'] business, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded and maintained, (r) all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (q)) or otherwise, (s) all Liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (r)), including the right of stoppage in transit, and (t) any of the foregoing, whether now owned or now due, in which any [Debtor] has an interest, or hereafter acquired, arising, or to become due, in which any [Debtor] obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing; provided, however, that the Collateral shall not include, and the Security Interest shall not attach to, any Excluded Assets.*

Pursuant to that certain Intercreditor Agreement (as amended and in effect, the "***Prepetition Intercreditor Agreement***"), the Prepetition ABL Agent

and Prepetition Term Loan Agent have agreed to their respective rights and priorities with respect to the Prepetition Collateral.

(6)     Prepetition Liens. The Prepetition Liens of the Prepetition Secured Lenders have priority over all other Liens except any Liens which are valid, properly perfected, unavoidable, and senior to the Prepetition Liens (collectively, the "**Permitted Prior Liens**").

(a)     As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) (a) the Prepetition Secured Debt constitutes legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any Prepetition Secured Lender with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code, and (iv) the Prepetition Secured Debt constitutes allowable secured claims.

(b)     On the date that this Interim Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Secured Lenders, together with its affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtors may have (i) to challenge or object to any of the Prepetition Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise.

(c)     None of the Debtors possesses and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Financing Documents or

the Prepetition Liens, or any claim of the Prepetition Lender pursuant to the Prepetition Financing Documents, or otherwise.

(7) Cash Collateral. The Prepetition Secured Lenders have a continuing security interest in and Lien on all or substantially all of the Debtors' Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Secured Debt.

(8) Priming of DIP Facility. In entering into the DIP Financing Agreements, and as consideration therefor, each of the Debtors hereby agrees that until such time as all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

### III. **Findings Regarding the Post-Petition Financing.**

F. **Need for Post-Petition Financing.** An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates for the benefit of their stakeholders. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

G. **No Credit Available on More Favorable Terms.** As discussed in the First Day Declaration and the Tang Declaration, the Debtors have been unable to obtain any of the following:

(1) unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)      credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)      credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)      credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien,

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.

The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (defined below).

H.      **Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens are valid, senior, perfected, or unavoidable. Moreover, nothing shall prejudice the following:

(1)      the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Lender, the Prepetition Secured Lenders, and any Committee appointed pursuant to section 1102 of the Bankruptcy Code, to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)      the rights of any Committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party-in-interest to challenge the validity, priority, perfection, and extent of the Prepetition Liens as set forth in this Order.

I.      **Adequate Protection for Prepetition Secured Lenders.** As a result of the grant of the DIP Liens, subordination only to, and solely in the event of a DIP Order Event of Default, the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Secured Lenders are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral)

during these Chapter 11 Cases.  As adequate protection, the Prepetition Secured Lenders will receive the Adequate Protection (as defined below) described in Paragraph 14 of this Interim Order.  In light of such Adequate Protection, the Prepetition Secured Lenders have agreed (1) to the Debtors' use of Cash Collateral, on the terms set forth in this Interim Order, (2) that such Adequate Protection adequately protects the Prepetition Secured Lenders, (3) that the Adequate Protection provided herein is sufficient and acceptable, and (4) that subject to Paragraphs, 15, 35, and 36 no further adequate protection is necessary.

J.    **Prepetition Secured Lenders Governed By Prepetition Intercreditor Agreement**.  The Prepetition ABL Agent and Prepetition Term Loan Agent are parties to the Prepetition Intercreditor Agreement.  The Prepetition Intercreditor Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code in the Chapter 11 Cases.  The Prepetition Secured Lenders have consented that their respective interests in the Prepetition Collateral shall continue to be governed by the Prepetition Intercreditor Agreement (including, without limitation, (a) the Prepetition ABL Agent's rights with respect to the Revolving Credit Priority Collateral and (b) the Prepetition Term Loan Agent's rights with respect to the Term Loan Priority Collateral, in each case as such terms are defined in the Prepetition Intercreditor Agreement), unless otherwise expressly provided by this Interim Order.

K.    **Prepetition Secured Lenders' Consent to Priming**.  The Prepetition Secured Lenders have consented to the priming of the Prepetition Liens by the DIP Liens.

L.    **Adequacy of the Approved Budget.**  The Approved Budget (defined below), attached hereto as ***Exhibit "2,"*** is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

M.     **Sections 506(c) and 552 of the Bankruptcy Code.**  In light of their agreement to subordinate their Liens and superpriority claims (1) only to the Carve Out, in the case of the DIP Lender, and (2) only to the Carve Out and the DIP Liens, in the case of the Prepetition Secured Lenders, the DIP Lender and the Prepetition Secured Lenders are each entitled to (a) a waiver of the provisions of section 506(c) of the Bankruptcy Code upon entry of the Final Order and (b) all rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of the Final Order, the Debtors shall not assert that the "equities of the case" exception shall apply.

N.     **Conditions Precedent to DIP Lender's Extension of Financing.**  The DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Financing Agreements and subject to the following:

(1)     the entry of this Interim Order and the Final Order, and

(2)     findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (or the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

O.     **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.**  The extension of credit under the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes

and uses, as a consequence of which the DIP Lender are entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

P.     **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' business during the wind-down of their operations and the management and preservation of the Debtors' assets and personal property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The DIP Motion is granted as set forth herein.

**I.     DIP FINANCING.**

A.     **Approval of Entry into the DIP Financing Agreements.**

2.     The Debtors are expressly and immediately authorized, and empowered to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, the Closing Fee, the Commitment Fee, and reasonable attorneys', financial advisors', and accountants' fees and disbursements as provided for in the DIP Credit Agreement

which amounts, subject to the provisions of Paragraph 44 below, shall not otherwise be subject to approval of this Court.  Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

**B.   Authorization to Borrow.**

3.     In order to enable them to continue to operate their businesses during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement and acceptable to the Prepetition Term Loan Lenders), the Debtors are hereby authorized under the DIP Facility to borrow an amount up to $42,000,000 in accordance with the terms and conditions of the DIP Credit Agreement.

**C.   Application of DIP Proceeds.**

4.     The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement and acceptable to the Prepetition Term Loan Lenders), solely as follows:

(a)     to pay costs, expenses and fees in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(b)     for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, the Debtors' liquidation, and other proper corporate purposes of the Debtors not otherwise prohibited by the

terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(c)     upon entry of the Final Order, to refinance the Roll-Up Obligations, as provided in Paragraph 14(c)(iv) below; and

(d)     upon entry of the Final Order, if not previously funded, to fund the Prepetition Indemnity Account (as defined below).

**D.     Conditions Precedent**.

5.     The DIP Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived, as determined by the DIP Lender in its reasonable discretion, in accordance with the DIP Credit Agreement.

**E.     The DIP Liens**.

6.     Subject to the limitations set forth in Paragraph 7 below, effective immediately upon the entry of this Interim Order, the DIP Lender is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Liens (collectively, the "***DIP Liens***") senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order, upon and to all of the following (collectively, the "***DIP Collateral***"):

(a) The Collateral, as defined in the DIP Financing Agreements, including:

*All personal property of each [of the Debtors], including, without limitation, all: (a) Accounts, (b) Chattel Paper, (c) Commercial Tort Claims (including, but not limited to, those Commercial Tort Claims listed on Schedule 3.07 to the Security Agreements), (d) Deposit Accounts, (e) Documents, (f) Equipment, (g) Fixtures, (h) General Intangibles (including Payment Intangibles), (i) Goods, (j) Instruments, (k) Inventory, (l) Investment Property, (m) Letter-of-Credit Rights, (n) Software, (o) Supporting Obligations, (p) money, policies and certificates of insurance, deposits, cash, cash equivalents, or other property, (q) all books, records, and information relating to any of the foregoing ((a) through (p)) and/or to the operation of any [of the Debtors'] business, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded and maintained, (r) all insurance proceeds, refunds, and*

*premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (q)) or otherwise, (s) all Liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (r)), including the right of stoppage in transit, and (t) any of the foregoing, whether now owned or now due, in which any [Debtor] has an interest, or hereafter acquired, arising, or to become due, in which any [Debtor] obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing; provided, however, that the Collateral shall not include, and the Security Interest shall not attach to, any Excluded Assets;*

(b)     Subject to entry of the Final Order, the Bankruptcy Recoveries (defined below), but only (A) the full amount of any such recovery or settlement thereof to the extent arising under section 549 of the Bankruptcy Code and (B) all amounts necessary to reimburse the DIP Lender for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all other Bankruptcy Recoveries (the foregoing Bankruptcy Recoveries in (A) and (B) being referred to collectively as the "***Specified Bankruptcy Recoveries***").   As used herein, "***Bankruptcy Recoveries***" shall mean any claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof.

(c)     The proceeds of all of the Debtors' interests in leaseholds, but not the leaseholds themselves, whether or not so perfected prior to the Petition Date.

**F.     DIP Lien Priority.**

7.     The DIP Liens to be created and granted to the DIP Lender, as provided

herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code,

(b)     first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)     subject only to (i) the Carve Out and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Credit Agreement.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the

foregoing (each a "*Successor Case*"), and/or upon the dismissal of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code. Upon entry of the Final Order, the DIP Liens shall not be subject to an assertion by the Debtors of the "equities of the case" exception of section 552 of the Bankruptcy Code, and shall not be subject to section 506(c) of the Bankruptcy Code. The DIP Liens are and shall be subject to the terms and conditions of the Prepetition Intercreditor Agreement.

      **G.**     **Enforceable Obligations**.

      8.     The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

      **H.**     **Protection of the DIP Lender and Other Rights.**

      9.     From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order and in compliance with the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement and acceptable to the Prepetition Term Loan Lenders).

      **I.**     **Superpriority Administrative Claim Status.**

      10.     Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326,

328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) and 552(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment; ***provided, however***, that the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

11.     Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations or with any other claims of the DIP Lender arising hereunder.

## II.    USE OF CASH COLLATERAL

### A.    Authorization to Use Cash Collateral.

12.     Pursuant to the terms and conditions of this Interim Order, the Final Order, the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and in accordance with and as may be limited by the budget (subject to permitted variances) (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement and in all instances acceptable to the Prepetition Term Loan Lenders, the "***Approved Budget***"), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of the Interim Order and terminating upon notice being provided by the DIP Lender to the Debtors that (i) a DIP Order Event of Default (defined below) has occurred and is continuing and (ii) the termination of the DIP Credit Facility.  Upon satisfaction of any remaining portion of the Prepetition ABL Debt and the DIP Obligations, the Debtors are authorized to continue to use Prepetition Term Loan

Lenders' Cash Collateral after the date of repayment of the Prepetition ABL Debt and the DIP Obligations in full (the "*Post-ABL/DIP Payoff Period*") pursuant to the terms of this Interim Order and the Final Order unless and until the date on which the Bankruptcy Court enters a subsequent order authorizing the Debtors' use of the Prepetition Term Loan Lenders' Cash Collateral, which order shall be subject to the express consent of the Prepetition Term Loan Lenders and shall be submitted for approval to the Court within ten days of a written request therefor to the Debtors from the Prepetition Term Loan Lenders; provided, that (i) the Borrowers shall give notice to the Prepetition Term Loan Lenders in accordance with the provisions of Section 2.02(b) with respect to each such use (which notice shall contain detail substantially in the form of, and containing substantially the same information as set forth in, daily cash reporting provided by or on behalf of the Debtors to the DIP Lenders and/or the Prepetition ABL Agent (including at such times as the Debtors were in cash dominion under the Prepetition ABL Credit Agreement (including, with respect to, the purpose of each such use of cash)) and, to the extent applicable prior to a "Store Closing Sale" as defined in the GOB Sale Order, deliver an updated Borrowing Base Certificate in accordance with Section 4.02(d) in support thereof, and (ii) the use of the Prepetition Term Loan Lenders' Cash Collateral during the Post-ABL/DIP Payoff Period shall at all times be conditioned upon (A) the Debtors' compliance (subject to variances permitted pursuant to the DIP Credit Agreement) with the Approved Budget and the other covenants set forth in Sections VI and VII of the DIP Credit Agreement (the provisions of which are incorporated herein *mutatis mutandis* with respect to the Prepetition Term Lenders), (B) the accuracy, in all material respects, of the representations and warranties set forth in Section V of the DIP Credit Agreement (the provisions of which are incorporated herein *mutatis mutandis* with respect to the Prepetition Term Lenders) and (C) the delivery by the Debtors to the Prepetition

Term Lenders, on each business day, of a "flash" cash report for the Debtors substantially in the form of, and containing substantially the same information as set forth in, daily cash reporting provided by or on behalf of the Debtors to the DIP Lenders and/or the Prepetition ABL Agent (including at such times as the Debtors were in cash dominion under the Prepetition ABL Credit Agreement). Subject to the Sections VI 26 and VII 32(ii)(A), 34 and 36 hereof, the provisions of which are incorporated herein *mutatis mutandis* with respect to the Prepetition Term Lenders, the Debtors' authorization to use the Prepetition Term Loan Lenders' Cash Collateral shall terminate upon the failure of the Debtors to comply with any of the items set forth in clauses (A) through (C) in the immediately preceding proviso in the preceding sentence.

13.    Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except (x) with respect to the sale of assets as contemplated in the GOB Sale Order and the assumption and assignment of leases as contemplated in the GOB Sale Order and (y) as otherwise permitted in the DIP Facility under the DIP Credit Agreement and the other DIP Financing Agreements and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement and acceptable to the Prepetition Term Loan Lenders).

## III.    ADEQUATE PROTECTION FOR PREPETITION SECURED LENDERS.

14.    As adequate protection for the interest of the Prepetition Secured Lenders in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordinated only to, and solely upon the giving of notice by the DIP Lender of a DIP Order Event of Default, the Carve Out, the Debtors' use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral, including the disposition of assets as contemplated in the GOB Sale Order, the

Prepetition Secured Lenders shall receive adequate protection as follows (collectively, "**_Adequate_**

**_Protection_**"):

(a)   **Adequate Protection Liens**. Solely to the extent of the diminution in the value of the interest of the Prepetition Secured Lenders in the Prepetition Collateral, the Prepetition Secured Lenders shall have, subject to the terms and conditions set forth below, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, perfected, and enforceable additional and replacement security interests and Liens in the DIP Collateral (the "**_Adequate Protection Liens_**") which shall be (i) junior only to the Carve Out, the DIP Liens securing the DIP Facility, and Permitted Prior Liens and (ii) in all instances, subject to the Prepetition Intercreditor Agreement; _provided_ that the Adequate Protection Liens shall be subject to disgorgement to the extent the Prepetition Liens are successfully challenged pursuant to a Final Order.

(b)   **Adequate Protection Superpriority Claim**. Solely to the extent of the diminution in the value of the interests of the Prepetition Secured Lenders in the Prepetition Collateral, the Prepetition Secured Lenders shall have an allowed superpriority administrative expense claim (the "**_Adequate Protection Superpriority Claim_**") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim and (iii) the Carve Out), in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) and 552 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment; **_provided, however_**, that the Adequate Protection Superpriority Claim shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

(c)   **Adequate Protection Payments**. The Prepetition Secured Lenders shall receive adequate protection in the form of the following, which shall be

subject to disgorgement to the extent the Prepetition Liens are successfully challenged pursuant to a Final Order:

(i) the current payment of the reasonable documented out-of-pocket fees, costs and expenses of its financial advisors and attorneys,

(ii) on the first day of each calendar month, commencing May 1, 2014, cash interest at the "Default Rate" as provided in the Prepetition Financing Documents,

(iii) all products and proceeds of the Prepetition Collateral and the DIP Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course,) regardless of whether such collateral came into existence prior to the Petition Date, shall be applied as follows: (x) first, to reduce the Prepetition ABL Debt until paid in full and (y) second, to reduce the DIP Obligations until paid in full and

(iv) with respect to the Prepetition ABL Lenders, and only upon entry of the Final Order, payment in full of the remaining Prepetition ABL Debt (the "*Roll-Up Obligations*").

(d) **Adequate Protection With Respect to GOB Sale Order**.  The sale process to be implemented under Section 363 of the Bankruptcy Code as provided in the GOB Sale Order, including the timeline and milestones contained therein, shall not be materially modified without the prior written consent of the Prepetition Secured Lenders.  Upon the disposition of Prepetition Collateral as contemplated in the GOB Sale Order, any such Prepetition Collateral shall be sold free and clear of the Prepetition Liens, the Adequate Protection Liens, and the DIP Liens, *provided, however*, that (x) such Prepetition Liens, Adequate Protection Liens, and DIP Liens shall attach to the proceeds of any such sale and (y) those proceeds shall be paid to the Prepetition ABL Lender and the DIP Lender at the closing of such sale in the order and priority set forth in this Interim Order.

(e) **Access to Records**.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Lenders have under their respective Prepetition Financing Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Secured Parties (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors, and (iv) otherwise to have the full cooperation of the Debtors in accordance with the terms of the DIP Credit Agreement, including, without limitation, sections 6.10, 6.14(b) and 6.23 thereof.

(f)     **Prepetition Indemnity Account**.     Upon the earlier of the entry of the Final Order or the closing on the sale of the Debtors' assets as provided in clause (d) above, the Debtors shall establish a segregated account in the control of the Prepetition Secured Lenders (the "*Prepetition Indemnity Account*"), into which the sum of $250,000 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition Secured Lenders under the Prepetition Financing Documents, including without limitation, the provisions of Section 10.04 of both the Prepetition ABL Credit Agreement and the Prepetition Term Loan Credit Agreement (collectively, the "*Prepetition Indemnity Obligations*").

(i)     Upon the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed (x) an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 22 hereof, or (y) an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Secured Lenders related to the Prepetition Secured Debt, whether in the Chapter 11 Cases or independently in another forum, court, or venue (together, a "*Challenge Proceeding*"), all amounts held in the Prepetition Indemnity Account shall be released to the Debtors.

(ii)     The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account and by a lien on the Prepetition Collateral, Adequate Protection Liens, and the Adequate Protection Superpriority Claim.

(iii)     The Prepetition Secured Lenders may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee or any other parties in interest and without further order of this Court, upon compliance with the provisions of Paragraph 44 below.

**A.     Term Loan Collateral Account.**

15.     The Debtors shall establish a segregated deposit account (the "*Term Loan Collateral Account*") for the benefit of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders into which the Debtors shall immediately deposit any proceeds of Term Loan Priority Collateral (as such term is defined in the Prepetition Intercreditor Agreement) obtained outside the ordinary course of business (including, without limitation, any sales of intellectual

property or real estate). Notwithstanding anything to the contrary in this Interim Order, (a) the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders shall be granted a first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Lien senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates on the Term Loan Collateral Account, and (b) unless it is after the commencement of the Post-ABL/DIP Payoff Period, the Prepetition ABL Lender and the DIP Lender shall be granted a second priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Lien senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates (other than the Lien granted to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders) on the Term Loan Collateral Account, and (c) this Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of such Liens. The Debtors shall maintain the Term Loan Collateral Account solely for the benefit, and at the direction, of (x) the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders, and, (y) unless it is after the commencement of the Post-ABL/DIP Payoff Period, the Prepetition ABL Lender and the DIP Lender, and the Debtors shall be prohibited from accessing the Term Loan Collateral Account without the prior written consent of (x) the Prepetition Term Loan Agent, and (y) the Prepetition ABL Agent and the DIP Agent, if applicable.

**B.    Section 507(b) Reservation for the Prepetition Secured Lenders to Seek Further Adequate Protection.**

16.    Nothing herein shall impair or modify the Prepetition Secured Lenders' rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Lenders hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Secured Lenders in the Prepetition Collateral

during the Chapter 11 Cases or any Successor Case; *provided*, *however*, that any section 507(b) claim granted in the Chapter 11 Cases to the Prepetition Secured Lenders shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

## IV.    POSTPETITION LIEN PERFECTION.

17.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.

18.    Notwithstanding the foregoing, the DIP Lender and/or the Prepetition Secured Lenders may, in their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

19.    The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.

20.     The DIP Lender and the Prepetition Secured Lenders, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

21.     The DIP Lender shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have the co-equal rights with the Prepetition Secured Lenders (and upon payment in full of the Prepetition ABL Debt, shall succeed to the rights of the Prepetition ABL Lender) with respect to all third party notifications in connection with the Prepetition Financing Documents, all Prepetition Collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

22.     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary to:

(a)     permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b)     authorize the DIP Lender , the DIP Lender, the Prepetition Secured Lenders to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## V.    RESERVATION OF CERTAIN THIRD-PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS.

23.    Nothing in this Interim Order or the DIP Credit Agreement or the other DIP Financing Agreements shall prejudice whatever rights any Committee(s) or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court may have to bring a Challenge Proceeding, including any of the following:

(a)    to object to or challenge the Debtors' Stipulations set forth in Paragraphs E (1) through E (8), including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Secured Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, or

(b)    to bring suit against the Prepetition Secured Lenders in connection with or related to the Prepetition Secured Debt (for the avoidance of doubt, the Roll-Up Obligations referred to in paragraph III.14 above are subject to challenge and subject to disgorgement if successfully challenged pursuant to a Final Order), or the actions or inactions of the Prepetition Secured Lenders arising out of or related to the Prepetition Secured Debt;

*provided, however*, that any Committee(s) or any other party-in-interest with requisite standing that has been sought and granted by this Court must commence a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Secured Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition Secured Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Secured Lenders), by the later of (x) for any Committee, 60 days following the appointment of the first official Committee or (y) for any party-in-interest other than an official Committee, 75 days following entry of this Interim Order (collectively, (x) and (y) shall be referred to as the "*Challenge Period*" and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "*Challenge Period Termination Date*"). The Challenge Period Termination Date may occur as to

one, but not both, of the Prepetition Secured Lenders, if an objection or challenge is brought against one but not both of the Prepetition Secured Lenders. If a chapter 11 trustee is appointed before the end of the Challenge Period, then the Challenge Period shall be extended for the chapter 11 trustee to 75 days after their appointment, and for any chapter 7 trustee to 75 days after conversion.

24.    Upon the Challenge Period Termination Date with respect to one or both of the Prepetition Secured Lenders, as the case may be, any and all such challenges and objections by any party (including, without limitation, any Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) *shall be deemed to be forever waived and barred*, and the Prepetition Secured Debt as to one or both of the Prepetition Secured Lenders, as the case may be, shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or both of the Prepetition Secured Lenders, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest.

25.    To the extent any such Challenge Proceeding is filed, the Prepetition Secured Lenders, or either of them as the case may be, shall be entitled to include the costs and expenses, including but not limited to reasonable attorneys' fees and disbursements, incurred in defending the objection or complaint as part of the Prepetition Secured Debt to the extent permitted pursuant to the relevant Prepetition Financing Documents. To the extent any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Secured Lenders, or either of them as the case may be, shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the

objection or complaint as part of the Prepetition Secured Debt and as part of the Prepetition

Indemnity Obligations which shall be reimbursed by the Debtors including (x) each month as

provided for in Paragraph 44, below and (y) out of the Prepetition Indemnity Account, and as one

of the Adequate Protection Superpriority Claims, and the Prepetition Indemnity Account shall be

maintained until the final resolution of all such objections or claims.  The Debtors shall remain

liable to the Prepetition Secured Lenders, or either of them as the case may be, for all unpaid

Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity

Account are insufficient to satisfy them in full.

## VI.    CARVE OUT AND PAYMENT OF PROFESSIONALS.

26.    Subject to the terms and conditions contained in this Paragraph 26, the DIP

Liens, DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the

Adequate Protection Superpriority Claims are subordinate only to the following (collectively, the

"*Carve Out*"):

(a)    allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(b)    all accrued and unpaid fees, disbursements, costs and expenses, allowed by this Court prior to or after delivery of a Carve Out Trigger Notice and incurred by professionals retained by the Debtors or a Committee, if any, (the "*Case Professionals*"), through the date of service by the DIP Lender of a Carve Out Trigger Notice (defined below), as limited by the respective Approved Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week), less the amount of prepetition retainers received by such Case Professionals and not previously applied to fees and expenses; and

(c)    all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $750,000 less the amount of prepetition retainers received by

such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above. The Carve Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals. For purposes of the foregoing, "*Carve Out Trigger Notice*" shall mean a written notice delivered by the DIP Lender to the Borrowers and their counsel, counsel to the Prepetition Term Loan Lenders, the United States Trustee and lead counsel to any Committee, which notice may be delivered at any time following the occurrence and continuance of any DIP Order Event of Default.

27.     For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, Liens or claims securing the DIP Obligations and/or the Prepetition Secured Debt granted or recognized as valid. Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein. Further, the Carve Out shall exclude and shall not be used to pay any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the DIP Lender's Liens in the DIP Collateral, (iii) the Prepetition Secured Debt, (iv) the Prepetition Secured Lenders' Liens in the Prepetition Collateral or (v) the Adequate Protection Liens or (B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Lender's or the Prepetition Secured Lenders' assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, or the Prepetition Indemnity Account; *provided, however,* that such exclusion does not encompass any investigative work conducted by the Case Professionals retained by the Committee, but, subject to entry of the Final Order, only up to $25,000 of the Carve Out may be used for such investigative work.

28.     Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Lender or the Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses on any ground other than the existence or priority of the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims.

## VII.    COMMITMENT TERMINATION DATE, DIP EVENT OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date.

29.     All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "*Commitment Termination Date*"):

(a)     August 31, 2014;

(b)     the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility (the "*DIP Commitments*") have been irrevocably terminated as a result of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

(c)     the failure of the Debtors to obtain entry of the Final Order on or before May 12, 2014; or

(d)     the closing of a sale following entry of an Order by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of the Debtor pursuant to the provisions of section 363 of the Bankruptcy Code, whether pursuant to the GOB Sale Order or otherwise.

### B.    DIP Events of Default.

30.     Each of the following shall constitute a "*DIP Order Event of Default.*"

(a)     The occurrence of the Commitment Termination Date; or

(b)     Unless each of the Prepetition Secured Lenders and the DIP Lender have provided their prior written consent or all Prepetition Secured Debt and all

DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 38 below, or other arrangements for the payment of the Prepetition Secured Debt and the DIP Obligations satisfactory to the Prepetition Secured Lenders and the DIP Lender, respectively, in their sole and exclusive discretion have been made) and all DIP Commitments (as defined below) have terminated, any order entered in the Chapter 11 Cases, or in any Successor Case which authorizes any of the following:

(i)      Any modification, stay, vacation or amendment to the DIP Orders to which the DIP Lender and Prepetition Secured Lenders have not consented;

(ii)     A priority claim or administrative expense or unsecured claim against the Debtors (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect of the Obligations, except with respect to the Carve Out;

(iii)    Any Lien on any DIP Collateral having a priority equal or superior to the Lien securing the DIP Obligations, except (a) with respect to the Carve Out, or (b) for the Permitted Prior Liens;

(iv)     Any order which authorizes the return of any of the Debtors' property pursuant to section 546(h) of the Bankruptcy Code; or

(v)      Any order which authorizes the payment of any Indebtedness (other than the Prepetition ABL Debt, Indebtedness reflected in the Approved Budget, and other Indebtedness approved by the DIP Lender and Prepetition Secured Lenders, in each case incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or transfer of property) with respect to any such Indebtedness which is secured by a Lien other than as set forth in the DIP Orders).

31.      Unless and until the Prepetition ABL Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the Prepetition ABL Debt and the DIP Obligations satisfactory to the Prepetition ABL Lender, and the DIP Lender, respectively, in their sole and exclusive discretion have been made) and all DIP Commitments

have been irrevocably terminated, the protections afforded to the Prepetition ABL Lender and the DIP Lender pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming the *Joint Plan of Liquidation of Coldwater Creek Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**") or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Liens and Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

**C.      Rights and Remedies Upon DIP Order Event of Default.**

32.      Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that (i) after the occurrence of any Event of Default under the DIP Financing Agreements, the DIP Lender may accelerate the DIP Obligations without further order of this Court and (ii)(A) after the occurrence of any DIP Order Event of Default or (B) at any time thereafter during the continuance of such DIP Order Event of Default, upon five business days prior written notice of such occurrence, in each case given to each of (v) the Debtors, (w) counsel to the Debtors, (x) counsel to the Prepetition Term Loan Lenders, (y) counsel for any Committee(s) or the 30 largest unsecured creditors, on a consolidated basis, and (z) the Office of the United States Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements.

33.      Upon the occurrence of an Event of Default under the DIP Financing Agreements and provided that such Event of Default is still continuing:

(a)      the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Financing Agreements and this Interim Order;

(b)     the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements and this Interim Order;

(c)     the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out; and

(d)     any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.

34.     Following the giving of written notice by the DIP Lender of the occurrence of a DIP Order Event of Default, the Debtors, the Prepetition Term Loan Lenders, and any Committee(s) appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court. If the Debtors, the Prepetition Term Loan Lenders, or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and the right of the DIP Lender to exercise its remedies, or if the Debtors, the Prepetition Term Loan Lenders, or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and this Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of the five business day notice period provided in Paragraph 30 above.

35.     Subject to the provisions of Paragraphs 31, 32, and 33 above, upon the occurrence of a DIP Order Event of Default, the DIP Lender is authorized to exercise its remedies and proceed under or pursuant to the DIP Financing Agreements; except that, with respect to any of the Debtors' leasehold locations, the DIP Lender's rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Lender; or (iii) which the DIP Lender has under applicable non-bankruptcy law. All proceeds realized from any of the foregoing shall be turned over to the

DIP Lender for application to the DIP Obligations and the Prepetition ABL Debt under, and in accordance with the provisions of, the DIP Financing Agreements and this Interim Order.

36.     Nothing included herein shall prejudice, impair or otherwise affect the Prepetition ABL Lender's or the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtors, nor the DIP Lender's rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

### D.     No Waiver of Remedies.

37.     The delay in or the failure of the Prepetition Secured Lenders or the DIP Lender to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Secured Lenders' or the DIP Lender's rights and remedies. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the Prepetition Secured Lenders or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Lenders and the DIP Lender to (i) request conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Secured Lenders and the DIP Lender may have.

### VIII.   CERTAIN LIMITING PROVISIONS

### A.     Section 506(c) Claims and Waiver.

38.     Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Secured Lenders or the DIP Lender to any charge, Lien, assessment, or claim against

the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Liens under section 506(c) of the Bankruptcy Code or otherwise; ***provided, however***, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

39.    As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the Prepetition Secured Lenders, the DIP Lender, the Prepetition Collateral, and the DIP Collateral.

**B.    Proceeds of Subsequent Financing.**

40.    Without limiting the provisions and protections of Paragraph 41 below, if at any time prior to the irrevocable repayment in full of all Prepetition ABL Debt and DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of the Plan with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Lender and applied in reduction of the DIP Obligations and thereafter to the Prepetition ABL Lender to be applied in reduction of the Prepetition ABL Debt.

**C.    Restrictions on Disposition of Collateral.**

41.    The Debtors shall not do the following:

(a)    sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender or the Prepetition Secured Lenders to the extent required under the DIP Financing

36

Agreements or the Prepetition Intercreditor Agreement (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or Prepetition Secured Lenders or an order of this Court), except for the following:

(i)     sales of the Debtors' Inventory in the ordinary course of business,

(ii)    as part of the disposition of assets as contemplated in the GOB Sale Order, or

(iii)   except as otherwise provided for in the DIP Financing Agreements and this Interim Order and approved by this Court, or

(b)     assume, reject, or assign any Lease without the prior written consent of the DIP Lender or the Prepetition Secured Lenders, except as contemplated in the GOB Sale Order, the Plan, or as otherwise provided for in the DIP Financing Agreements.

## IX.   OTHER RIGHTS AND OBLIGATIONS

### A.    Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order.

42.     Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the Liens or priority authorized or created hereby.

43.     Notwithstanding any modification, amendment, or vacation of any or all of the provisions of this Interim Order, any claim or protection granted to the Prepetition Secured Lenders or the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any such claim or protection granted to the Prepetition Secured Lenders or the DIP Lender shall be governed in all respects by the original provisions of this Interim Order,

and the Prepetition Secured Lenders and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the Adequate Protection and the DIP Protections granted herein, with respect to any such claim, including those found under section 364(e) of the Bankruptcy Code.

**B.    Prepetition Secured Lenders' and DIP Lender's Expenses.**

44.    As provided in the Prepetition Financing Documents and in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the Prepetition Secured Lenders and the DIP Lender, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved Budget, will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by this Court; ***provided, however***, the Debtors may seek a determination by this Court whether such fees and expenses are reasonable; ***provided, however***, the Debtors shall provide to the Office of the United States Trustee a copy of any invoices received from the DIP Lender or the Prepetition Secured Lenders for professional fees and expenses during the pendency of the Chapter 11 Cases and shall reimburse the Prepetition Secured Lenders and the DIP Lender for all such fees in expenses within ten days of receipt of a copy of each invoice, in the absence of a specific written objection as to the reasonableness of the amounts contained in the subject invoice.

**C.    Binding Effect.**

45.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender,  the Prepetition Secured Lenders, the Debtors, and their respective

successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), and any Committee(s) (subject to the provisions of Paragraphs 23-25 above), whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

     **D.**     **No Third Party Rights.**

     46.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than the Debtors and the Prepetition Secured Lenders.

     **E.**     **Prepetition Secured Lenders' and DIP Lender's Rights Governed By Prepetition Intercreditor Agreement.**

     47.     Unless expressly provided otherwise in this Interim Order, the interests of the Prepetition Secured Lenders and the DIP Lenders in the DIP Collateral and Prepetition Collateral shall be governed by the Prepetition Intercreditor Agreement.

     **F.**     **No Marshaling.**

     48.     Neither the DIP Lender nor the Prepetition Secured Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

     **G.**     **Section 552(b) of the Bankruptcy Code.**

     49.     Upon entry of the Final Order, the DIP Lender and the Prepetition Secured Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender or the Prepetition Secured Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

**H.    Amendments.**

50.    The Debtors and the DIP Lender may only amend, modify, supplement or waive any provision of the DIP Financing Agreements with the express written consent of the Prepetition Secured Lenders and upon notice to the Committee, but without further approval of this Court, unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments or (iii) changes the maturity date of the DIP Facility. All waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Lender, the Prepetition Secured Lenders and, if required, approved by this Court.

**I.    Survival of Interim Order.**

51.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

(b)    converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code,

(c)    to the extent authorized by applicable law, dismissing the Chapter 11 Cases,

(d)    withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

52.    The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any protections granted the Prepetition Secured Lenders shall continue in full force and effect notwithstanding the entry of any order described in Paragraph 50, and such DIP Protections and protections for the Prepetition Secured Lenders shall maintain their priority as provided by this

Interim Order until all of the DIP Obligations of the Debtors to the DIP Lender pursuant to the DIP Financing Agreements and the Prepetition Secured Debt has been irrevocably paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

J.    **Inconsistency**.

53.    In the event of any inconsistency between the terms and conditions of the DIP Credit Agreement, the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

K.    **Enforceability**.

54.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

L.    **Objections Overruled**.

55.    Notwithstanding any reservations of rights made on the record at the Interim Hearing with respect to this Interim Order, all objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

M.    **Waiver of Any Applicable Stay**.

56.    Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

N.    **Proofs of Claim**.

57.    The Prepetition Secured Lenders and the DIP Lender will not be required to file proofs of claim in the Chapter 11 Cases or in any Successor Case.

**O.    Headings.**

58.    The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**P.    Retention of Jurisdiction.**

59.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

**X.    FINAL HEARING.**

60.    The Debtors shall serve notice of entry of this Interim Order and the Final Hearing on: (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates, on a consolidated basis; (b) counsel to Wells Fargo as the Prepetition ABL Lender and as the DIP Lender; (c) counsel to the Prepetition Term Loan Lenders; (d) any official committees appointed in these chapter 11 cases (if and when appointed); (e) applicable state and federal taxing authorities; (f) the Securities and Exchange Commission, (g) all known secured creditors; and (h) all parties that have filed requests for notice pursuant to Bankruptcy Rule 2002.

61.    **The Final Hearing on the Motion shall be held before this Court on May 6, 2014, at 9:30 a.m. (ET).**

62.    If no objections to the relief sought in the Motion are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Lender and entered by this Court.

63.    Any party in interest objecting to the relief sought in the Motion shall submit any such objection in writing and file same with this Court and serve such objection so as to be received no later than **April 29, 2014 at 4:00 p.m. (ET)** on the following parties:

| **Debtors** | **Office of the United States Trustee** |
|---|---|
| **Coldwater Creek Inc.**<br>One Coldwater Creek Drive<br>Sandpoint, Idaho 83864<br>Attn: John E. Hayes III | Office of the United States Trustee for the District of Delaware<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Benjamin A. Hackman<br>Email: Benjamin.A.Hackman@usdoj.gov |
| **Counsel for the Debtors**<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>Attn: Douglas P. Bartner and Jill Frizzley<br>E-mail: dbartner@shearman.com,<br>　　　　jfrizzley@shearman.com<br><br>and<br><br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:　(302) 571-6600<br>Attn: Pauline K. Morgan and Kenneth J. Enos | **Counsel for the Prepetition Term Loan Lenders**<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, Esq.<br>E mail address: jsussberg@kirkland.com<br><br>and<br><br>Klehr Harrison Harvey Branzburg LLP<br>919 Market Street, Suite 1000<br>Wilmington, Delaware 19801-3062<br>Attn: Domenic E. Pacitti, Esq.<br>E-mail: dpacitti@klehr.com<br>Fax: (302) 426-9193 |
| **Counsel for the DIP Lender**<br>Riemer & Braunstein LLP<br>Three Center Plaza,<br>Boston, Massachusetts 02108<br>Attn: Donald E. Rothman, Esq.<br>E-mail: drothman@riemerlaw.com<br>Fax: (617) 880-3456<br><br>and<br><br>Womble Carlyle Sandridge & Rice, LLP<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>Attn: Steven K. Kortanek, Esq.<br>E-mail: skortanek@wcsr.com<br>Fax: (302) 661-7728 | |

Dated: April 14, 2014

Brendan Linehan Shannon
United States Bankruptcy Judge