## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
In re:                                :

**COLDWATER CREEK INC., et al.,**[1]      :

         **Debtors.**           :

:
-------------------------------------------------------------x

**Chapter 11**

**Case No. 14–10867 (BLS)**

**(Jointly Administered)**

**Docket Ref. Nos. 13 and 266**

## ORDER (I) AUTHORIZING ENTRY INTO AGENCY
## AGREEMENT, (II) AUTHORIZING SALE OF ASSETS AND
## STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Coldwater Creek Inc., on behalf of itself and

its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**"), for an order (this "**Order**") authorizing (I) entry into the Agency Agreement with a

joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners,

LLC (the "**Agent**") authorizing, among other things, (a) sale of certain assets and (b) store

closing sales and (II) granting other related relief, all as set forth more fully the Motion; and

upon the *Declaration of James A. Bell in Support of Voluntary Petitions, First Day Motions and*

*Applications*; and upon the *Declaration of Andrew Bednar in Support of the Debtors' Motion for*

*Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections,*

*(C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and*

---

[1]     The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Coldwater Creek Inc. (9266), Coldwater Creek U.S. Inc. (8831), Aspenwood Advertising, Inc. (7427), Coldwater Creek The Spa Inc. (7592), CWC Rewards Inc. (5382), Coldwater Creek Merchandising & Logistics Inc. (3904), and Coldwater Creek Sourcing Inc. (8530). Debtor CWC Sourcing LLC has the following Idaho organizational identification number: W38677. The Debtors' corporate headquarters is located at One Coldwater Creek Drive, Sandpoint, Idaho 83864.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the Agency Agreement, as applicable.

*Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief;* and upon the *Declaration of Scott Brubaker in Support of the Debtors' Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief;* and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Transactions (defined below) represented by the Agency Agreement (defined below) having been determined to be the highest and best offer for the assets in each of the relevant Asset Classes; and the Sale Hearing having been held on May 6, 2014 to consider the remaining relief requested in the Motion and approval of the Agency Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings had before this Court (including but not limited to the testimony and other evidence proffered or adduced at the Sale Hearing); and consideration of all objections filed and not resolved or made on the record at the hearing on the Motion; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

2

01:15435530.3

FOUND AND DETERMINED THAT:[3]

A.    **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of the Debtors entry into the Agency Agreement, and each of the transactions contemplated thereby (collectively, the "**Transactions**") is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.    **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.    **Statutory Predicates:**  The statutory predicates for the approval of the Agency Agreement and Transactions contemplated therein are sections 105, 363, 364 and 554 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules, and Local Rule 6004-1.

D.    **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding Procedures Order.  No other or further notice is required.

E.    **Opportunity to be Heard:**  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Senior Lenders, (c) counsel to Wells Fargo Bank, National Association as Administrative Agent for the Debtors' postpetition debtor in possession credit agreement, (d) the Office of the United States

---

[3]    The findings of fact and the conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

3

Attorney for the District of Delaware, (e) counsel to the Creditors' Committee, (f) all parties who are known to assert any lien, claim, interest or encumbrance (collectively, "**Liens**") in or upon any of the Assets (defined below), (g) all lessors of leases for the Stores, (h) all applicable federal, state, and local taxing authorities (collectively, the "**Taxing Authorities**"), (i) all applicable state attorneys general and (k) all other applicable parties in interest, including all entities on the general case service list as of the date of entry of the Bidding Procedures Order (collectively, the "**Notice Parties**"). Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F.    **Sale Process:** The Debtors and their advisors have conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order. Based upon the record of these proceedings, all creditors and other parties-in-interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

G.    **Bidding Procedures Fair:**    The Bidding Procedures were substantively and procedurally fair to all parties and all Potential Bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer for the Assets.

H.    **Highest and Best Offer:** After the conclusion of the Auction held on May 1 and 2, 2014 and in accordance with the Bidding Procedures, the Debtors determined in a valid and sound exercise of their business judgment that the highest and best Qualified Bid for the Asset Classes of (i) the inventory, (ii) furniture, fixtures and equipment (as defined in Section 5.2(a) of the Agency Agreement, the "**FF&E**"), (iii) intellectual property (as defined in Section 7.1(vi) of the Agency Agreement, the "**Intellectual Property**") and (iv) the customer list (as

4

defined in Section 7.1(v) of the Agency Agreement, the "**Customer List**"; (i) through (iv) the "**Assets**") was that of the Agent as increased as a result of the Auction and as set forth in the Amended and Restated Agency Agreement, annexed hereto as <u>Exhibit 1</u> (the "**Agency Agreement**").

I.    **Agency Agreement:**  On April 11, 2014, the Debtors and the Agent entered into an agency agreement which was approved by the Bidding Procedures Order (the "**Stalking Horse Agency Agreement**").  In accordance with the Bidding Procedures Order, the Stalking Horse Agency Agreement was deemed a Qualified Bid and the Agent was eligible to participate in the Auction.

J.    **Business Judgment:**  The Debtors' decisions to (i) enter into the Agency Agreement, and (ii) perform under and make payments required by the Agency Agreement, constitute reasonable exercises of the Debtors' sound business judgment consistent with their fiduciary duties and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  Good and sufficient reasons for the approval of the Agency Agreement and the Transactions have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances for the Transactions outside: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Transactions is necessary and appropriate to preserve and maximize the value of the Debtors' estates.  To maximize the value of the Assets, it is essential that the Transactions occur promptly.

K.    **Personally Identifiable Information:**  The Transactions include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("**Personally Identifiable Information**") (or assets containing personally identifiable

information).  A consumer privacy ombudsman has been appointed pursuant to section 363(b)(1) of the Bankruptcy Code.

        L.      **Time of the Essence:**  Time is of the essence in effectuating the Agency Agreement and the Transactions and proceeding with the Sale contemplated therein without interruption.  Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing and in the Bednar Declaration and Brubaker Declaration, the Transactions under the Agency Agreement must be commenced as soon as possible following entry of this Order, and in no event later than May 8, 2014, to maximize the value that the Agent may realize from the Sale, and the value that the Debtors may realize from entering into the Agency Agreement.  Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a) and 6004(h) and permit the immediate effectiveness of this Order.

        M.      **Sale Free and Clear:**  A sale of the Assets other than one free and clear of Liens, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, COBRA, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-

petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "**Encumbrances**") and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of the Assets. But for the protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement. In addition, each entity with an Encumbrance upon the Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Transactions free and clear of Encumbrances are appropriate pursuant to section 363(f) of the Bankruptcy Code and are in the best interests of the Debtors' estates, their creditors and other parties in interest.

        N.    **Arms-length Sale:** The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United

01:15435530.3

States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

O. **Good Faith:** The Debtors, their management and their board of directors, and the Agent, each of the entities comprising the Agent, and their respective members, officers, directors, employees, agents and representatives, as well as CC Intellectual Property Limited and The Talbots, Inc. (collectively, the "**Designee**") and their officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Agency Agreement between the Agent and the Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code. The Designee is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protection afforded thereby. The Agent and the Designee shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed, modified, amended or vacated on appeal or by a subsequent order of this Court and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the Sale or the liens or priority authorized or created under this Order or the Agency Agreement. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Assets. Neither the Debtors, the Agent, nor the Designee have engaged in any conduct that would cause or permit the Sale, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. Neither the Agent nor the

8

Designee has violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, neither the Agent nor the Designee has acted in a collusive manner with any person and were not controlled by any agreement among bidders or any lender to the Debtors or other party-in-interest in these chapter 11 cases. The Agent's and the Designee's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

P.      **Insider Status:**  Neither the Agent nor the Designee is an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors or the Designee and the Debtors.

Q.      **Security Interests and Administrative Claims:**  The Liens and superpriority administrative claims provided for in the Agency Agreement and this Order to secure the obligations of the Debtors under the Agency Agreement to the Agent and Designee are necessary to induce the Agent and Designee to agree to terms for the Agency Agreement that maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their Stores in partnership with a liquidation agent. But for the protections afforded to the Agent and the Designee under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement and the Designee would not have agreed to participate in the Transaction. In addition, the Prepetition Lenders and the Debtors' postpetition debtor in possession financing lenders, which hold security interests in the property to which the Agent's security interests attach, have

9

consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and this Order.

    R.  **Corporate Authority:**  Subject to the entry of this Order, the Debtors (a) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (b) have all of the corporate or other power and authority necessary to consummate the Transactions and (c) have taken all actions necessary to authorize and approve the Agency Agreement and the Transactions.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

    S.  **No Successor Liability:**  No sale, transfer or other disposition of the Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent or the Designee to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories.  The Agent and the Designee are not successors to the Debtors or their respective estates.

    T.  Notwithstanding Paragraph S, the Designee is the successor in interest to the Customer List.

10

IT IS HEREBY ORDERED THAT:

## A.    Motion Granted, Objections Overruled

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

## B.    Agency Agreement Approved and Authorized

3.    The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to enter into and perform under the Agency Agreement (and each of the transactions contemplated therein (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including without limitation the Debtors, the Committee, the Secured Lenders, any successor chapter 7 or chapter 11 trustee, and all other parties-in-interest) without further order of this Court and the exercise of Designation Rights)) is hereby approved in its entirety and is incorporated herein by reference.  The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.    All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of Agent therefor or any further order of this Court.

11

5.      Subject to the provisions of this Order, the Debtors, the Agent and the Designee are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Transactions in accordance with the Agency Agreement and, with respect to the Agency Agreement, (a) the sale guidelines attached hereto as Exhibit 2 (the "**Sale Guidelines**"), which Sale Guidelines are hereby approved in their entirety or (b) as otherwise agreed in writing by the Agent, in consultation with the Debtors and any landlord.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent, the Designee and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Transactions and effectuate the Agency Agreement and each of the transactions and related actions, including, but not limited to, the Designation Rights, contemplated or set forth therein.

### C.      Order Binding

7.      This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

8.      This Order and the terms and provisions of the Agency Agreement shall supersede and replace paragraph 2 of the Bidding Procedures Order.

9.      This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, the Designee, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

### D.      Good Faith

10.      Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and the

01:15435530.3

Agent and the Designee shall be protected by sections 363(m) and 364(e) of the Bankruptcy

Code in the event that this Order is reversed or modified on appeal. The reversal or modification

on appeal of the authorization provided herein to enter into the Agency Agreement and

consummate the Transactions shall not affect the validity of such Transactions, unless such

authorization is duly stayed pending such appeal. The Agent and the Designee are entitled to all

of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.

The Transactions are not subject to avoidance pursuant to section 363(n) of the Bankruptcy

Code.

### E.    Conduct of the Sale

11.    Except as otherwise provided in the Agency Agreement, pursuant to

sections 105(a) and 363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all

Merchandise, the FF&E, the Intellectual Property and the Customer List to be sold and/or

designated pursuant to the Agency Agreement free and clear of any and all Encumbrances,

including, without limitation, all Liens, whether arising by agreement, any statute or otherwise

and whether arising before, on or after the date on which these chapter 11 cases were

commenced, with any presently existing Liens encumbering all or any portion of the Assets or

the proceeds thereof attaching only to the Guaranteed Amount and, subject to the Agent's liens

granted pursuant to the Agency Agreement and this Order, other amounts payable to the Debtors

under the Agency Agreement, with the same validity, force and effect as the same had with

respect to the Assets at issue, subject to any and all defenses, claims and/or counterclaims or

setoffs that may exist. Similarly, for all assets designated by the Agent to the Designee, the

transfer to the Designee will be a legal, valid, enforceable, and effective transfer of assets and

will vest the Designee with all right, title, and interest of the Debtors in the assets free and clear

14

of all interests of any kind or nature whatsoever with all such interests of any kind or nature whatsoever to attach to the portion of the purchase price ultimately attributable to the assets that are subject to such interests, in the order of their priority, with the same validity, force and effect which they now have as against the assets, subject to any claims and defenses the Debtors may possess with respect thereto; *provided, however*, that the Debtors and Agent shall not sell the reserve rack, active rack, or conveyor located at the Parkersburg, West Virginia distribution center, as more fully described in the limited objection [Docket No. 254] of Wood County Development Authority ("**WCDA**"), absent an agreement with WCDA or further order of this Court after notice and hearing.

12.     For the sake of clarity, however, nothing in Paragraph 11 is intended to diminish the liens in favor of the Agent as reflected in the Agency Agreement and this Order, that attach to, among other things, the proceeds of the Sale.

13.     Additional Agent Goods (as defined in the Agency Agreement) shall be consigned to the Debtors as a true consignment under Article 9 of the Uniform Commercial Code (the "**UCC**"). The Agent is hereby granted a first priority security interest in (a) the Additional Agent Goods and (b) the Additional Agent Goods proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; *provided* that the Agent is authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Debtors as the consignee therefor, and the Agent's security interest in such Additional Agent Goods and Additional Agent Goods proceeds.

15

14.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest.  Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related Transactions.

15.     All entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent or upon Agent's instructions, or the Designee.  Additionally, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be necessary to release their interest in the assets, if any, as such interest may have been recorded or may otherwise exist.

16.     This Order (a) shall be effective as a determination that, upon the entry of this Order, all interests of any kind or nature whatsoever existing as to the Assets prior to the entry of this Order have been unconditionally released, discharged and terminated as against the Assets, with any such interests attaching to the proceeds, and that the conveyances described

16

herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the assets.

17.     Except as expressly permitted or otherwise specifically provided by the Agency Agreement or this Order, all persons and entities, including, but not limited to, all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities with prior notice, parties to executory contracts, customers, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtors or the Assets conveyed as of the date hereof (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the entry of this Order, or the transfer of the Assets to the Agent or the Designee, hereby are forever barred, estopped, and permanently enjoined from asserting against Agent, the Designee, their successors, designees or assigns, their property, or the Assets conveyed in accordance with the Agency Agreement, such persons' or entities' interests.

18.     The Debtors and the Agent shall not extend the Sale Termination Date (as defined in the Agency Agreement) beyond July 31, 2014 unless extended by mutual written agreement of the Debtors and the Agent following a commensurate extension of the expiration date of the Agent Letter of Credit.

17

01:15435530.3

19.     Unless otherwise ordered by this Court, all newspapers and other advertising media in which any portion of the Sale may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the Transaction, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the Sale Guidelines, and this Order.

20.     To the extent there is any inconsistency between this Order, the Agency Agreement and Sale Guidelines, on the one hand, and the *Order Authorizing the Debtors to (I) Honor Prepetition Obligations to Customers, (II) Continue Customer Programs and (III) Receive, Process and Honor Credit Card Transactions* [Docket No. 79] on the other hand, this Order, the Agency Agreement and Sale Guidelines shall control.

21.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (a) diminish the obligation of any entity to comply with environmental laws, or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the Sale shall not be exempt from,

18

and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**"). Except as specifically set forth herein, nothing in this Order shall alter or affect the Debtors' and the Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

## F.    Disputes Between Government Units or Landlords and the Debtor or the Agent.

22.    To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "store closing," "sale on everything," "going out of business," "everything must go" or similar inventory liquidation sales, or is a bulk sale law (each a "**GOB Law**," and together, the "**GOB Laws**"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale

19

restrictions, or any fast pay laws that would otherwise apply solely to the Sale (collectively, the **"Liquidation Laws"**), the following provisions shall apply:

a.       Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and, to the extent applicable, the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to the provisions of this Order, are authorized to conduct the Sale in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.       Within five business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the Sale will be held and (iv) the chief legal counsel for each such local jurisdiction.

c.       To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a **"Reserved Dispute"**), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within 15 days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one business day thereafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute

20

01:15435530.3

within 15 days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

        d.     In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or any other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court.  This Court grants authority for the Debtors and the Agent to conduct the Transactions pursuant to the terms of this Order, the Agency Agreement, and/or the Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        e.     If, at any time, a dispute arises between the Debtors and/or Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those

21

Subparagraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made *de novo*.

23.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to the provisions set forth above. Such hearing will, to the extent practicable, be scheduled initially within two business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

24.    Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the Sale Guidelines, including, but not limited to, advertising the Sale as a "store closing," "sale on everything," "going out of business," "everything must go" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

25.    Except as expressly provided in Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct

01:15435530.3

of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions. The Agent and landlords of the Stores are authorized to enter into agreements ("**Side Letters**") between themselves modifying the Sale Guidelines without further order of this Court, and such Side Letters shall be binding as among the Agent and any such landlords, *provided* that nothing in such Side Letters affects the provisions of Paragraphs 22 and 23. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

26.    Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 22 and 23 shall apply), no person or entity, including but not limited to any utility company landlord, licensor, creditor, or other interested party or any person acting for or on behalf of the foregoing shall take any action to directly or indirectly prevent, interfere with, impede or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors, utility companies and other interest parties and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Debtors' closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

01:15435530.3

27.    The Agent shall have the right to use the Debtors' Stores and all related store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Order and subject to Paragraphs 22 and 23 of this Order.

28.    Nothing in the Agency Agreement or this Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with section 365(d)(3) of the Bankruptcy Code; *provided* that the conduct of the Sale in accordance with the Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

29.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without the Agent's incurring liability to any person or entity in connection with such abandoned property; *provided, however*, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any Closing Location on or after the applicable Sale Termination Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such abandoned property without any liability to any individual or entity that may claim an interest in such abandoned property and the landlords reserve the right to file claims in these cases for all costs associated with such abandoned property. The Debtors reserve the right to object to such claims. Notwithstanding the foregoing, in the event that any damage beyond normal wear and tear occurs to Diamond Potomac's Premises (as defined in Docket No. 261) as a result of the abandonment of property by the Debtors as authorized pursuant to this Order or a significant

24

amount of FF&E is left at Diamond Potomac's Premises, all rights and remedies of Diamond

Potomac Town Center LLC to seek an administrative or other claim for damages in these chapter

11 cases shall be preserved.

        30.     Before any sale, abandonment or other disposition of the Debtors'

computers (including software) and/or cash registers and any other point of sale FF&E located at

the Stores (collectively, "**POS Equipment**") that may contain customer lists, identifiable

personal and/or confidential information about the Debtors' employees and/or customers, or

credit card numbers ("**Confidential Information**") takes effect, the Debtors shall remove or

cause to be removed the Confidential Information from the POS Equipment.

        31.     During the Sale Period, the Agent shall accept the Debtors' validly-issued

gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement

Date, and the Debtors shall reimburse the Agent for such amounts during the weekly sale

reconciliation provided for and subject to the limitations set forth the Agency Agreement. The

Agent shall accept returns of merchandise sold by the Debtors prior to the Sale Commencement

Date, *provided* that such return is otherwise in compliance with the Debtors' return policies in

effect as of the date such item was purchased and the customer is not repurchasing the same item

so as to take advantage of the sale price being offered by the Agent, and the Debtors shall

reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject

to the limitations set forth in the Agency Agreement. The Agent will not honor the Debtors'

customer discounts.

        32.     All state and federal laws relating to implied warranties for latent defects

shall be complied with and are not superseded by the sale of said goods or the use of the terms

"as is" or "final sales." The Debtors and/or the Agent shall accept return of any goods purchased

01:15435530.3

during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, *provided* that the consumer must return the merchandise within 21 days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall promptly reimburse the Agent in cash for any refunds the Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

33.   During the Sale Term, the Agent shall be granted a limited license and right to use the trade names, logos and customer, mailing and e-mail lists, catalogs, e-commerce sites (including, without limitation, websites and social media sites such as Facebook and Twitter) relating to and used in connection with the Sale in accordance with the terms of the Agency Agreement; *provided, however*, that the Agent shall comply with the Debtors' Privacy Policy (as defined in Section 7.12 of the Agency Agreement) with respect to Personally Identifiable Information.

34.   Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

35.   The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, *provided* that in the case of a *bona fide* dispute the Debtors

26

are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any party, other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtor and account for sales taxes as and to the extent provided in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

36.    Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be pursuant to the Agency Agreement) are authorized and empowered to transfer the Assets among the Stores.  The Agent is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement.

### G.    Liens and Superpriority Claims Granted To Agent

37.    Subject to the Agent having satisfied its payment obligations under the Agency Agreement, any amounts owed by the Debtors to the Agent under the Agency Agreement shall be granted the status of superpriority claims in these chapter 11 cases pursuant to section 364(c) of the Bankruptcy Code senior to all other superpriority claims, including (without limitation) to the superpriority claims of the Secured Lenders.

38.    The Agent shall be granted a valid, binding, enforceable and perfected security interest as provided for in Section 15 of the Agency Agreement (without the necessity of filing financing statements to perfect the security interests).

27

39.     The Debtors shall set aside proceeds from the Sale in the amount of $245,457.40 (the "**Segregated Sale Proceeds**") in a segregated account as adequate protection for the secured claims of (a) Bexar County, (b) Cypress-Fairbanks ISD, (c) Dallas County, (d) Fairview, (e) Fort Bend County, (f) Frisco, (g) Harris County, (h) McLennan County, (i) Montgomery County, (j) Pearland, (k) San Marcos CISD, (l) Smith County, (m) Tarrant County, (n) Lubbock Central Appraisal District, (o) Arlington Independent School District, (p) City of Highland Village, (q) Carroll Independent School District, (r) Wichita Falls Independent School District, (s) Wichita County, (t) City of Wichita Falls, (u) Randall County, (v) Brazoria County Tax Office, (w) Spring Branch Independent School District, (x) Woodlands Road & Utility District #1, (y) Woodlands Metro Municipal Utility District, (z) Clear Creek Independent School District, (aa) Harris County Water Control Improvement District #116, (bb) Harris County Water Control Improvement District #155, (cc) Harris County Municipal Utility District #358, (dd) Fort Bend Independent School District, (ee) Willow Fork Drainage District, (ff) Cinco Municipal Utility District #12, (gg) Fort Bend Levee Improvement District #2m, (hh) Tyler Independent School District, (ii) Collin County, (jj) the Collin County Junior College District, (kk) the Frisco Independent School District, (ll) the City of Plano and (mm) the City of McKinney (collectively, the "**Texas Tax Authorities**") and the Treasurer for Maricopa County, Arizona ("**Maricopa County**") prior to the distribution of any proceeds to any other creditor. The liens of the Texas Tax Authorities and Maricopa County shall attach to the Segregated Sale Proceeds to the same extent and with the same priority as the liens now have against the property of the Debtors.  The Segregated Sale Proceeds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Tax Authorities or Maricopa County, nor a cap on the amounts they may be entitled to receive.

28

Notwithstanding the foregoing, the claims and liens of the Texas Tax Authorities and Maricopa County shall remain subject to any objections any party otherwise would be entitled to raise as to the priority, validity or extent of such liens. The Segregated Sale Proceeds may be distributed only upon agreement between the Texas Tax Authorities or Maricopa County, as applicable, and the Debtors, in consultation with the Term Loan Lenders, or by subsequent order of this Court, duly noticed to the Texas Tax Authorities or Maricopa County, as applicable.

### H.    Consumer Privacy Ombudsman Provisions

40.    The Designee is the successor in interest to the Customer List. The Designee shall be bound by the provisions of the Privacy Policy and be responsible for any violation of the Privacy Policy after the date of the transfer.

41.    The Designee shall not disclose, sell or transfer customers' Personally Identifiable Information to any third party in a manner inconsistent with the Privacy Policy; *provided* that nothing in this Order shall prevent or prohibit the Designee or a subsequent transferee of the Customer List from modifying the Privacy Policy in accordance with such Privacy Policy's terms and conditions.

42.    The Designee shall provide notice to all customers on the Customer List that their email addresses are being transferred and provide such customers with the opportunity to opt out of the transfer (the "**Opt Out Notice**"). Within 30 days of the entry of this Order, the Designee shall file a certification with this Court that the Opt Out Notice has been so provided.

### I.    Back-Up Bidder

43.    Pursuant to section B.11 of the Bidding Procedures, the Qualified Bidder with the second highest or otherwise best Qualified Bid at the Auction for the Assets, as determined by the Debtors in the exercise of their business judgment, and with the consent of the

29

Secured Lenders and in consultation with the Committee, was a combined bid between a

contractual joint venture comprising Tiger Capital Group, LLC, SB Capital Group, LLC and

Great American Group WF, LLC (the "**Inventory Back-Up Bidder**") in respect of inventory,

FF&E and Customer List Asset Classes and CWC Brand Holdings LLC (the "**IP Back-Up**

**Bidder**") in respect of the Intellectual Property Asset Class (the Inventory Back-Up Bidder and

the IP Back-Up Bidder, the "**Back-Up Bidder**"). The Back-Up Bidder is hereby required to

keep its final bid (the "**Back-Up Bid**") open and irrevocable until the date that is three business

days after the commencement of the Store Closing Sales. If the Agent fails to consummate the

Sale because of a breach or failure to perform on the part of the Agent, the Back-Up Bidder shall

be deemed to be the new Successful Bidder for the Assets, and the Debtors shall be authorized,

but not required, to consummate and perform under their agreements with the Back-Up Bidder

without further order of this Court, in consultation with the Committee and the Secured Lenders.

   44. The obligations of the Inventory Back-Up Bidder, on the one hand, and

the IP Back-Up Bidder, on the other hand, are several and not joint.

   45. In consideration of its participation in the Auction, the Debtors, the

Committee and the Term Loan Lenders agreed that the Inventory Back-Up Bidder would

be entitled to a topping fee equal to $2.25 million to the extent it was not deemed the highest

and  best bid at the conclusion of the Auction (the "**Back-Up Topping Fee**"). The Back-Up

Topping Fee is commensurate with the real and substantial benefit conferred upon the Debtors'

estates by the Inventory Back-Up Bidder's participation in the Auction and constitutes an actual

and necessary cost and expense incurred by the Debtors in preserving and enhancing the value

of  these estates within the meaning of section 503(b) of the Bankruptcy Code. Subject to the

reservation of rights with respect to the Back-Up Topping Fee Dispute (as defined and set forth

below), the Back-Up Topping Fee shall be deemed an Allowed Administrative Claim as defined in the proposed *Joint Plan of Liquidation of Coldwater Creek Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Proposed Plan**"); *provided, however*, that if either (a) the Proposed Plan shall not have been confirmed and gone effective on or prior to September 29, 2014 (the "**Outside Date**") or (b) the Back-Up Topping Fee shall not otherwise have been paid to the Inventory Back-Up Bidder for any reason whatsoever on or prior to the earlier of (i) the Outside Date and (ii) the date on which the Term Loan Lenders receive payment on any Term Loan Claims (as such terms are defined in the Proposed Plan) in an amount in excess of the Back-Up Topping Fee, the Term Loan Lenders agree that the Back-Up Topping Fee shall be paid to the Inventory Back-Up Bidder out of the distributions made on account of any Term Loan Claims within 10 calendar days of receipt thereof; *provided, further, however*, that notwithstanding the entry of this Order, a dispute exists between the Committee and the Term Loan Lenders (the "**Back-Up Topping Fee Dispute**") as to whether the Term Loan Lenders agreed at the Auction (a) as the Committee contends, to pay the Back-Up Topping Fee in full through a reduction in the amount of any Allowed Term Loan Claims, or otherwise, such that the amount of net proceeds received by the Debtors from the Sale (or the sale of any other property of the Debtors in which the Term Loan Lenders assert a lien or security interest) shall not be reduced on account of the Back-Up Topping Fee, or (b) as the Term Loan Lenders contend, only to pay the Inventory Back-Up-Topping Fee to the extent that there are insufficient proceeds from the Sale (or the sale of any other property of the Debtors in which the Term Loan Lenders assert a lien or security interest) to pay any Allowed Term Loan Claims in full in cash. Each of the Committee's and the Term Loan Lenders' respective rights with respect to the Back-Up Topping Fee Dispute are hereby expressly reserved notwithstanding anything contained

31

in, or by virtue of the entry of this Order and to the extent that the Committee and the Term Loan Lenders are unable to resolve the Back-Up Topping Fee Dispute, each may seek an expedited determination from this Court in that regard. Notwithstanding anything to the contrary set forth herein or otherwise, the dispute between the Committee and the Term Loan Lenders shall not affect in any way the right of the Inventory Back-Up Bidder to receive the Back-Up Topping Fee. Notwithstanding anything to the contrary herein or otherwise, the Inventory Back-Up Bidder shall not be required to file any proof of administrative claim with respect to the Back-Up Topping Fee and any order entered by this Court in relation to the establishment of a bar date in any of these chapter 11 cases shall not apply to the Inventory Back-Up Bidder with respect to the Back-Up Topping Fee.

46.     In the event that the Debtors consummate their agreements with the Back-Up Bidder pursuant to Paragraph 43, (a) the Back-Up Bidder shall benefit in all respects from the factual findings related to the Agent contained in this Order and (b) either (i) the Inventory Back-Up Bidder shall agree to any Side Letters with or otherwise resolve any objection of landlords regarding the conduct of the Store Closing Sales that were timely filed prior to the objection deadline related to the relief sought herein or (ii) such landlords shall be entitled to resolution of such objections before this Court.

### J.     Other Provisions

47.     The Designation Rights set forth in the Agency Agreement are approved in their entirety. The Agency Agreement and this Order shall qualify as a Sale Notice designating the Intellectual Property to Designee. The Debtors shall cooperate with the Agent and the Designee to ensure the transfer of all Intellectual Property, including, but not limited to,

32

seeking further orders of this Court that may be necessary or advisable to effectuate such transfers.

48.      Following the entry of this Order, no holder of an interest in the Debtors or the Assets shall interfere with the Designee's title to or use and enjoyment of the Assets based on or related to such interest, or any actions that the Debtors may take in their chapter 11 cases.

49.      The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent and the Designee shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, no Agent or Designee shall be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, COBRA, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories (*provided* that the Designee shall be the successor in interest to the Customer List); or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), COBRA claims, benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

50.      Agent is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures

33

contemplated herein, any issues related to or otherwise connected to the Sale, and the Agency Agreement.

51.    Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of one of these cases to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

52.    The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, *provided* that the Committee and Secured Lenders consent, which consent shall not be unreasonably withheld or delayed.

53.    Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 22 and 23 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sale, (c) any other disputes related to the Sale and (d) to protect the Debtors and/or the Agent against any assertions of Encumbrances.  No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

01:15435530.3

54.     With respect to (a) the Software License Agreement (the "**SAP License Agreement**") entered into on or about March 31, 2006 between SAP Industries, Inc. ("**SAP**"), as assignee of SAP America, Inc., and Coldwater Creek Inc. and (b) any contracts in existence between Oracle America, Inc. ("**Oracle**") (including those to which Oracle is the successor in interest) and any of the Debtors (the "**Oracle Agreements**"; together with the SAP License Agreement, the "**Software Agreements**"), and any and all rights to software or proprietary information arising under the Software Agreements (the "**Software**"), including any Software embedded or loaded on any computers, equipment, hardware or other property of the Debtors (collectively, "**Computer Equipment**"), nothing in this Order, the Motion or the Agency Agreement, shall permit the Debtors, without the prior written consent of SAP or Oracle, as the case may be, to: (i) sell, transfer or assign the Software to any person or entity or (ii) use the Software for the benefit of the Agent (except for the sole purpose of fulfilling the Debtors' obligations to the Agent under the Agency Agreement) or any other third party.  Computer Equipment on which the Software is loaded or embedded may be sold or otherwise transferred by the Debtors if the Debtors covenant to (A) comply with all end of term duties as set forth in the Software Agreements, including, but not limited to, the permanent deletion of all Software from Computer Equipment prior to its transfer to any purchaser and (B) provide a certification to SAP or Oracle, as the case may be, as to their compliance with such end of term duties no later than five business days following the transfer of such Computer Equipment to any purchaser.  All rights of SAP and Oracle arising under their respective Software Agreements are expressly reserved.

55.     The Debtors are hereby authorized to enter into an agreement with Comenity Bank to modify their rights and obligations under that certain Credit Card Program

35

Agreement dated July 26, 2014 in connection with the conduct of the Store Closing Sales and any such agreement is hereby approved.

56.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

57.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement, the Sale Guidelines, or any prior order or pleading with respect to the Motion in these chapter 11 cases, this Order shall govern and control.

58.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

Dated: Wilmington, Delaware
     May 7 , 2014

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

36