**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CWC LIQUIDATION INC. (f/k/a Coldwater Creek Inc.), et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10867 (BLS)<br><br>(Substantively Consolidated)<br><br>Objection Date: October 24, 2018[2]<br>Hearing: November 29, 2018, 11:30 a.m.<br>Docket Ref. No. 1889 |

**RESPONSE OF DELTA GLOBAL SOURCING LTD. TO LIQUIDATING
TRUSTEE'S THIRTY-FIFTH OBJECTION TO CLAIMS**

Delta Global Sourcing Ltd. ("Delta Global") hereby files its response (the "Response") to the *Liquidating Trustee's Third-Fifth Omnibus (Substantive) Objection to Certain (a) Overstated Claims; (b) Misclassified Claims; (c) Overstated and Misclassified Claims; and (d) Claims Filed in the Wrong Case* [Docket No. 1889] (the "Objection"). In support of this Response, Delta Global respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  Delta Global shipped garments FOB Hong Kong to the Debtors, who received the goods during the 20 days before the petition date. Delta Global's proof

---

[1] The Debtors in these proceedings are: CWC Liquidation Inc. (f/k/a Coldwater Creek Inc.); CWC U.S. Liquidation Inc. (f/k/a Coldwater Creek U.S. Inc.); CWC Advertising Liquidation Inc. (f/k/a Aspenwood Advertising, Inc.); CWC Spa Liquidation Inc. (f/k/a Coldwater Creek The Spa Inc.); CWC Rewards Liquidation Inc. (f/k/a CWC Rewards Inc.); CWC M&L Liquidation Inc. (f/k/a Coldwater Creek Merchandising & Logistics Inc.); CWC Sourcing Liquidation Inc. (f/k/a Coldwater Creek Sourcing Inc.); and CWC Sourcing Liquidation LLC (f/k/a CWC Sourcing LLC).

[2] Extended for Delta Global by agreement of the parties.

of claim accordingly included a $674,224.66 administrative claim under 11 U.S.C. § 503(b)(9).

2.  The Objection contends that the Debtors received the garments before the 20-day period.  During informal discussions, the Liquidating Trustee explained that his contention is that when Delta Global shipped the garments through the Debtors' freight forwarder, Damco USA Inc., the freight forwarder constructively received possession of the garments as agent of the Debtors.

3.  Damco, however, functioned either as a freight forwarder who does not take possession of goods or a non-vessel-operating common carrier ("NVOCC").  If Damco functioned only as a freight forwarder, then Damco did not take possession of the garments.  If Damco functioned as an NVOCC, then its possession of the goods did not constitute "receipt."  Third Circuit law is clear that shipping goods FOB with a common carrier does not constitute "receipt" of goods for § 503(b)(9) purposes.

## BACKGROUND

4.  Delta Global sold garments to the Debtors in the ordinary course of the Debtors' business.  The sales were governed by various documents, including a Master Vendor Agreement, the general terms and conditions of the relevant purchase order, the Debtors' vendor handbooks, the face of the purchase order, the Debtors' Code of Conduct, and other "Related Documents" as listed in section 1.1 of the Master Vendor Agreement. Section 1.3 of the Master Vendor Agreement provides that any conflict in the documents is resolved by the preceding order of precedence.  (A copy of the Master

Vendor Agreement is attached as Exhibit A to Delta Global's proof of claim. A copy of the proof of claim, excluding voluminous Exhibit D, is attached as Exhibit 1.)

5. The Master Vendor Agreement § 3.4 provides that "All goods shall be . . . delivered to Coldwater Creek in accordance with the terms of the applicable Purchase Order" and that "INCOTERMS 2000 shall govern delivery terms for shipments originating outside the United States . . . ." Section 3.1 provides that "No goods may be shipped before or after the specified Ship Date" specified in the purchase order.

6. The purchase orders issued to Delta Global provided that Delta Global was to ship the garments FOB Hong Kong to 601 Coldwater Creek Drive in Mineral Wells, West Virginia. Each purchase order had a "Start Ship Date", a "Due At Frt Forwarder" date, and a "Cancel Date." (An exemplar of page 2 of a purchase order is attached as Exhibit 2. The relevant purchase orders are included in Exhibit D to the proof of claim.)

7. The Purchase Order Cover Sheets provide that "Goods with terms of FOB foreign port must be delivered to our designated freight forwarder on or before the Due at Frt Forwarder Date. If, for any reason, the Due at Frt Forwarder or Cancel Date cannot be met, you must immediately notify the appropriate contact at Coldwater Creek with the nature of the delay. . . . Goods specified in this Order not received on or before the Cancel Date will be refused or returned at your risk and expense and the Order cancelled." (A copy of page 1 of each purchase order ("Purchase Order Cover Sheet") and page 4 ("Coldwater Creek Purchase Order Terms and Conditions") is attached as Exhibit B to the proof of claim (Exhibit 1 hereto).)

3

8. When delivering the garments FOB Hong Kong in accordance with the purchase orders, Delta Global received either a forwarder's cargo receipt ("FCR") or a bill of lading from the carrier arranged by the freight forwarder on behalf of the Debtors. The bills of lading listed Delta Global as the shipper, the Debtors as consignee, and Damco A/S as the forwarding agent. (An exemplar of a bill of lading is attached as Exhibit 3. The relevant bills of lading are included in Exhibit D to the proof of claim.)

9. The FCRs (from Damco Hong Kong Limited) listed Delta Global as the shipper and the consignee as "To Order of Shipper." (An exemplar of an FCR is attached as Exhibit 4. The relevant FCRs are included in Exhibit D to the proof of claim.) Damco had a Logistics Services Agreement with the Debtors to provide (a) freight forwarding services including carrier management and booking services, (b) export and customs services, and (c) less-than-container NVOCC services including issuance of dock receipts and containerization of cargo.

10. Between approximately January 3 and March 13, 2014, Delta Global shipped $2,300,484.42 of garments to the Debtors. (The relevant dates are set forth in a spreadsheet attached as Exhibit C to the proof of claim (Exhibit 1 hereto).) As detailed below and in Exhibit C, the Debtors received $674,224.66 of the garments on or after March 22, 2014.

## ARGUMENT

11. Section 503(b)(9) of the Bankruptcy Code provides administrative expense treatment in connection with "the value of any goods received by the debtor

within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Section 503(b)(9) claims are allowed if: "(1) the vendor sold 'goods' to the debtor; (2) the goods were received by the debtor within twenty days [before the bankruptcy] filing; and (3) the goods were sold . . . in the ordinary course of business." *In re World Imports, Ltd.*, 862 F.3d 338, 341 (3d Cir. 2017) (quoting *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009)).

12. Delta Global's proof of claim demonstrates that the Debtors received $674,224.66 of the garments on or after March 22, 2014. The Liquidating Trustee contests only whether the garments were received by the Debtors within 20 days before the bankruptcy filing.

13. "Goods received by the debtor" under § 503(b)(9) finds its definition in the Uniform Commercial Code. UCC § 2-705(2)(a) provides that a seller can stop delivery of goods in transit until "receipt of the goods by the buyer . . . ." UCC § 2-103(1)(c) defines "receipt" of goods as the taking physical possession of them. As a result, "received" under the UCC and the Bankruptcy Code "does not occur until after the seller's ability to stop delivery ends . . . ." *World Imports*, 862 F.3d at 345;

14. When a seller ships goods to a buyer-debtor through a common carrier hired by the buyer-debtor, for § 503(b)(9) purposes the goods are in the possession of the carrier and not the buyer-debtor. The carrier does not act as the debtor-buyer's "agent for purposes of receipt." *World Imports*, 862 F.3d at 345; *see also In re Marin Motor Oil, Inc.*, 740 F.2d 220, 224–25 (3d Cir. 1984) (goods in possession

5

of carrier hired by buyer do not constitute possession or receipt by buyer for UCC § 2-702 and 11 U.S.C. § 546(c) reclamation purposes).[3] "'[M]ere intermediaries in the transport' of goods do not qualify as agents." *World Imports*, 862 F.3d at 345 (quoting *In re Trico Steel Co., LLC*, 282 B.R. 318, 323 (Bankr. D. Del. 2002).)

15. The Liquidating Trustee, however, contends that Damco was an agent of the Debtors for purpose of receiving goods on behalf of the Debtors. Damco purportedly provided services to the Debtors as a freight forwarder and/or NVOCC. In either event, those services did not constitute "receiving" goods as an agent of the Debtors for § 503(b)(9) purposes. To the extent that Damco had physical possession of Delta Global's garments, it possessed them as a common carrier or other intermediary in the transport of the garments. An NVOCC consolidates cargo from numerous shippers into larger groups for shipment by an ocean carrier. *See Prima U.S. Inc. v. Panalpina, Inc.*, 223 F.3d 126, 129 (2d Cir. 2000); 46 U.S.C. § 40102(a)(16) ("The term "non-vessel-operating common carrier" means a common carrier that—(A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier.").

16. Intermediaries, such as stevedores performing under contracts with the debtor-buyer to load or unload the goods, merely perform services in support of the transport of goods and thus are not agents for the debtor-buyer for the purposes of terminating a seller's right to stop transit under UCC § 2-705. *See In re Trico Steel Co.,*

---

[3] "Because § 503(b)(9) provides 'an alternative remedy to reclamation,' . . . it should be read and interpreted consistent with § 546(c)." *World Imports*, 862 F.3d at 343.

6

*LLC*, 302 B.R. 489, 493 (D. Del. 2003), *aff'g Trico Steel Co.,* 282 B.R. at 323. So like a vessel-owning common carrier, a NVOCC is not an agent of the buyer for purposes of receipt under the UCC or § 503(b)(9).

17. To the extent Damco did not have possession of the garments, and performed freight forwarding services, Damco did not possess the garments, whether for itself or the Debtors. A freight forwarder "secure[s] cargo space with a steamship company, give[s] advice on governmental licensing requirements, proper port of exit and letter of credit intricacies, and arrange[s] to have the cargo reach the seaboard in time to meet the designated vessel." *Prima U.S. Inc.*, 223 F.3d at 129; *see also National Customs Brokers & Forwarders Ass'n of America, Inc. v. U.S.,* 883 F.2d 93, 95 (D.C. Cir. 1989) (forwarder secures cargo space with shipping line (books the cargo), coordinates movement of cargo to shipside, arranges for payment of ocean freight charges, and prepares and processes ocean bills of lading, export declarations, and other documentation); 46 U.S.C. § 40102(a)(18) ("The term "ocean freight forwarder" means a person that—(A) in the United States, dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers; and (B) processes the documentation or performs related activities incident to those shipments."

18. The presence of freight forwarders, whether as non-possessory facilitators or possessory intermediaries in the transport of goods, does not alter the rule that shipping goods FOB through a common carrier (whether contracted directly by the buyer, as done in *World Imports*, or indirectly through a freight forwarder as done here)

7

means that receipt for § 503(b)(9) purposes does not occur until the buyer-debtor obtains possession of the goods from the seller.  *See O2Cool, LLC v. TSA Stores, Inc. (In re TSAWD Holdings, Inc.)*, 574 B.R. 482, 484, 486 (Bankr. D. Del. 2017) (seller had right to stop shipment of goods where the seller had delivered them to buyer's freight forwarder who arranged for their shipment with carriers); s*ee also Toll Holdings Ltd v. Stewart*, VID 181, 2016 WL 1169936, at ¶ 2, ¶ 18, ¶ 23 (Federal Court of Australia, General Division, 2016) (carrier was liable for not honoring a seller's stop notices, notwithstanding that the buyer used a freight forwarder to arrange the carrier).

19. Here, Delta Global shipped the garments to the Debtors by ocean common carriers, by delivering the garments to Damco.  Any possession of the goods by Damco did not constitute possession by the Debtors for § 503(b)(9) purposes.  As a result, the Debtors received Delta Global's garments during the 20 days before the petition date.

WHEREFORE, Delta Global respectfully requests that the Objection be overruled and that the Court grant for such other and further relief as the Court deems proper.

Dated:  October 24, 2018         */s/ Matthew Ward*
                                 Matthew Ward, Esq. (Del. Bar No. 4471)
                                 Morgan L. Patterson, Esq. (Del Bar. No. 5388)
                                 Womble Bond Dickinson (US) LLP
                                 222 Delaware Avenue, Suite 1501
                                 Wilmington, DE  19801
                                 Telephone:  (302) 252-4320
                                 Facsimile:  (302) 252-4330
                                 Email:  matthew.ward@wbd-us.com
                                 Email:  morgan.patterson@wbd-us.com

-and-

Kurt Ramlo
Levene, Neale, Bender, Yoo & Brill, L.L.P.
10250 Constellation Blvd, Suite 1700
Los Angeles, CA  90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: kr@lnbyb.com

*Counsel for Delta Global Sourcing Ltd.*