# EXHIBIT 1

| UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

Indicate Debtor against which you assert a claim by checking the appropriate box below (**Check only one Debtor per claim form**):

XX Coldwater Creek Inc. (Case No. 14-10867)    ☐ CWC Rewards Inc. (Case No. 14-10871)

☐ Coldwater Creek U.S. Inc. (Case No. 14-10868)    ☐ Coldwater Creek Merchandising & Logistics Inc. (Case No. 14-10872)

☐ Aspenwood Advertising, Inc. (Case No. 14-10869)    ☐ Coldwater Creek Sourcing Inc. (Case No. 14-10873)

☐ Coldwater Creek The Spa Inc. (Case No. 14-10870)    ☐ CWC Sourcing LLC (Case No. 14-10874)

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file requests for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Delta Global Sourcing

**COURT USE ONLY**

Name and address where notices should be sent:

Kurt Ramlo

Levene, Neale, Bender, Yoo & Brill L.L.P.

10250 Constellation Blvd., Suite 1700

Los Angeles, CA 90067

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**

_____

*(If known)*

Filed on:_____

Telephone number: (310) 229-1234    email: kr@lnbyb.com

Name and address where payment should be sent (if different from above):

Delta Global Sourcing Ltd.

3/F Fook Cheong Building

63 Hoi Yuen Road

Kwun Tong

Hong Kong

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number: 852-2152 6000    email: eddy@deltasourcing.com.hk

**1. Amount of Claim as of Date Case Filed:**    $ 2,300,484.42

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** goods delivered
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|---|
| _ _ _ _ | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate   ☐Motor Vehicle   ☐Other
**Describe:**

**Value of Property: $_____**

**Annual Interest Rate_____% ☐Fixed or ☐Variable
(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**   $_____

**Amount Unsecured:**   $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

B 10 (Modified Official Form 10) (4/13)                                                                                              2

---

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):** Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, which goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$           674,224.66                                                              **(See instruction #6)**

---

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

---

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, or security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**9. Signature:** (See instruction #9)

Check the appropriate box.

☒ I am the creditor.      ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                   (Attach copy of power of attorney, if any.)      or their authorized agent.      (See Bankruptcy Rule 3005.)
                                                                                 (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Eddy Yuen
Title:  Managing Director
Company:  Delta Global Sourcing Ltd.                                                                    6/6/2014
Address and telephone number (if different from notice address above):      _____      _____
 3/F Food Cheong Building, 63 Hot Yuen Road                                      (Signature)                   (Date)
 Kwun Tong, Kowloon
 Hong Kong
Telephone number: 852-2152 6000      email:  eddy@deltasourcing.com.hk

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

In re Coldwater Creek Inc. et al., Case No. 14-10867 (BLS)

Attachment to Proof of Claim of

**Delta Global Sourcing Ltd.**

1.       Distributions.  As of June 5, 2014, Delta Global Sourcing Ltd. ("Creditor") has received $1,181,632.36 in payments from third parties with respect to its claims against the four Debtors listed below.  Thus, Creditor is entitled to no more than $1,118,852.06 in distributions on account of its $2,300,484.42 in claims against the Debtors Coldwater Creek Inc., Coldwater Creek US Inc., Coldwater Creek Merchandising & Logistics Inc., and Coldwater Creek The Spa Inc., all of whom are listed as parties to the Master Vendor Agreement dated March 23, 2009, the purchase orders from the Debtors, and other related documents and communications from the Debtors.

2.       Attachments.  Attached to this proof of claim are (a) a copy of the Master Vendor Agreement dated March 23, 2009, (b) a copy of a purchase order from the Debtors, (c) a summary of the invoices for goods which were ordered by and delivered to the Debtors but which remained unpaid as of the petition date, and (d) copies of invoices and shipping documents relating to goods which were ordered by and delivered to the Debtors but which remained unpaid as of the petition date.

3.       Reservation of Rights.  Creditor reserves all rights it may now or any time hereafter have against the Debtor, or any other entity or person, and any property held by the Debtor or any such entity or person.  This claim is not intended to be, and shall not be construed as: (1) an election of remedies; (2) a waiver of defaults; or (3) a waiver of limitation on any rights, remedies, claims, or interests of Creditor.  Creditor reserves any and all rights with respect to the Master Vendor Agreement and related documents (and any other claims it may file in the Debtor's bankruptcy case), including, but not limited to, the right to: (a) amend, update, or supplement this proof of claim at any time and in any respect; (b) file additional proofs of claim; (c) file requests for the payment of administrative or priority expenses in accordance with 11 U.S.C. §§ 365, 503, 507; and (d) amend, update, or supplement the proof of claim for any reason, including to add additional amounts due and owing and related documents.

4.       No consent to jurisdiction.  By filing this proof of claim, Creditor does not submit to the jurisdiction of this Court for any purpose other than with respect to this claim, and Creditor does not waive, and specifically preserves all of its procedural and substantive defenses to, any claim that may be asserted against Creditor by the Debtor or by any trustee of the Debtor's estate, including any defense based upon the lack of jurisdiction of this Court to entertain such a claim or to enter a final judgment thereon.

5.    <u>Service of objections or claim-related pleadings</u>.  Any objection or other contested matter or adversary proceeding initiated with respect to this proof of claim must be served on:

> Kurt Ramlo
> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 10250 Constellation Blvd., Suite 1700
> Los Angeles, CA  90067
>
> -and -
>
> Delta Global Sourcing Ltd.
> c/o B&Y Global Sourcing LLC
> 527 West 7th Street Suite 1000, 10th Floor
> Los Angeles, CA90014

# Exhibit A

# Exhibit A

# *Coldwater Creek*
## Master Vendor Agreement

This **Master Vendor Agreement** ("Agreement") is made and entered into as of this _23rd_ day of ___March___, 20 _09_ (the "Effective Date") by and between _Delta Global Sourcing___, a ___limited___ corporation having its principle place of business located at _Hong Kong___ _____ ("Vendor") and Coldwater Creek U.S. Inc., a Delaware corporation having its principal place of business at One Coldwater Creek Drive, Sandpoint, ID 83864 ("Coldwater Creek"), (each, a "Party"; collectively, the "Parties").

## 1. MASTER AGREEMENT

1.1  ***Master Agreement.***  This Agreement is intended to be a master agreement which sets forth the terms and conditions governing the purchase and delivery of all goods including, without limitation, all components, materials, packaging, containers, labels and services related thereto, ordered or intended to be ordered by Coldwater Creek from Vendor (collectively, the "Goods"). Coldwater Creek and Vendor may create binding contracts for the purchase and sale of Goods by executing one or more purchase orders (each, a "Purchase Order") issued by Coldwater Creek and accepted by Vendor showing agreement as to the following items: description of Goods, price, quantity, and delivery terms. Each Purchase Order entered into hereunder shall be deemed a separate and severable contract, not part of one or more installment contracts, and each such contract will comprise the Purchase Order, this Agreement, any exhibits, schedules, or addenda attached hereto, the Coldwater Creek Vendor Handbooks (the "Vendor Handbooks"), the Coldwater Creek Vendor Code of Conduct (the "Code of Conduct"), the Coldwater Creek Transportation Department Inbound Domestic Shipment Routing Instructions (the "Routing Instructions") and all other documents and product information sheets relating to such Purchase Order including any input and uploads to Coldwater Creek's Product Lifecycle Management System ("PLM") (each of such documents and PLM input and uploads are incorporated by reference, and collectively referred to as "Related Documents").

1.2  ***Electronic Data Interchange Agreement.***  The Parties may agree to conduct transactions via electronic data interchange. In such event, in addition to the terms and conditions of the documents listed above, Vendor agrees to be bound by the terms and conditions of the Coldwater Creek Data Interchange Agreement, which shall form a part of this Agreement.

1.3  ***Entire Agreement.***  The terms contained in this Agreement, the Purchase Order, the Vendor Handbooks, and the Related Documents will constitute the complete and exclusive statement of the terms and conditions between the Parties with respect to each contract entered into under this Agreement, and supersede and merge all prior proposals, understandings and all other agreements, oral and written, between the Parties pertaining to the subject matter of such contract. No course of dealing or manner of performance will constitute a waiver or modification of any such terms and conditions. Any conflicts between this Agreement and/or any Related Documents will be resolved according to the following order of precedence: (i) this Agreement; (ii) the General Terms and Conditions of the relevant Purchase Order; (iii) the Vendor Handbooks; (iv) the face of the Purchase Order; (v) the Code of Conduct; and (vi) the other Related Documents. No modification or alteration of this Agreement, the General Terms

and Conditions of any Purchase Order, the Vendor Handbooks, or the Code of Conduct shall be binding upon Coldwater Creek unless approved in writing by an officer of Coldwater Creek. Any proposals for any additional or different terms contained in communications from Vendor which are not signed by Coldwater Creek are objected to by Coldwater Creek without further notification.

## 2. PRODUCTS AND PRODUCT ORDERS

2.1 *No obligation to select or purchase.* Coldwater Creek's purchase of Goods from Vendor shall be at Coldwater Creek's sole discretion. Coldwater Creek is under no obligation to select any merchandise offered by Vendor, or to place an order for any Goods selected or otherwise offered to Coldwater Creek.

2.2 *Pre-Production Sample.* Contracts for the purchase of Goods entered into hereunder shall not be binding upon Coldwater Creek unless and until (i) a Purchase Order has been issued by Coldwater Creek and returned signed by Vendor, and (ii) Coldwater Creek has approved in writing a certified, pre-production sample of the Goods ("Certified Sample") submitted by Vendor. Vendor shall not commence production of any Goods, and Coldwater Creek shall not be liable for any costs or expenses incurred by Vendor in connection with any Goods, unless and until Vendor has signed and returned the applicable Purchase Order.

2.3 *Samples.* All samples submitted by Vendor shall be provided to Coldwater Creek at no cost, free domicile, and will become the property of Coldwater Creek. All costs, fees, charges, duties, taxes and the like associated with developing and delivery of samples shall be borne by Vendor. Coldwater Creek may sell or dispose of any samples provided by Vendor as it deems appropriate in its sole discretion.

2.4 *Safekeeping.* Vendor shall protect the physical security of Goods (including packaging, components, material, containers and labels) while in Vendor's possession from theft, spoilage, unauthorized diversion, use or damage from any cause, including fire, flood, water damage and excessive exposure to sunlight. Upon the request of Coldwater Creek, Vendor agrees to promptly (i) investigate claims regarding missing or otherwise unaccounted for Goods (including packaging, components, material, containers and labels), damaged Goods and service misconduct and further agrees to report its findings to Coldwater Creek; and (ii) provide any and all relevant documentation and other information to Coldwater Creek to facilitate Coldwater Creek's own investigation of missing or otherwise unaccounted for Goods, damaged Goods and service misconduct. Vendor agrees to manage loss prevention and "security awareness" programs as reasonably requested by Coldwater Creek.

2.5 *Subcontracting.* Vendor will not subcontract any portion of its obligations under this Agreement or any Purchase Order without Coldwater Creek's prior written consent. Subcontractors approved by Coldwater Creek shall be referred to herein as "Approved Subcontractors". Vendor will inform subcontractors of the terms and conditions of this Agreement and will ensure that subcontractors have agreed to be bound by these terms and conditions before undertaking any work or services on behalf of Coldwater Creek. Coldwater Creek's consent with respect to any subcontracting will not relieve Vendor of its responsibility to perform its obligations and will not constitute Coldwater Creek's consent to further

subcontracting. Vendor will be responsible for the acts and omissions of its subcontractors as though they were the acts and omissions of Vendor, itself.

2.6 **Testing.** In no event will Vendor's testing of Goods in accordance with the standards provided by Coldwater Creek in any way release or discharge Vendor from any liability for damages, or affect any other legal or equitable remedies otherwise available to Coldwater Creek under this Agreement, and in no event will passing results be construed as acceptance of any Goods by Coldwater Creek.

### 3. DELIVERY

3.1 **Delivery.** Vendor will deliver Goods to Coldwater Creek (or its authorized agent) at the time and delivery location specified in the applicable contract. Title and risk of loss for the Goods will remain with Vendor up to the point of delivery of conforming Goods to Coldwater Creek. Goods must be delivered to Coldwater Creek as a complete shipment (or in installments, if so specified in the applicable contract or approved in writing by Coldwater Creek) in accordance with the applicable ship date set forth on the Purchase Order (the "Ship Date"). No Goods may be shipped before or after the specified Ship Date, except as permitted in the applicable Purchase Order or as otherwise approved in writing by Coldwater Creek. Acceptance or payment for any untimely deliveries by Coldwater Creek shall not relieve Vendor of any liability for damages or any other remedies otherwise available to Coldwater Creek hereunder.

3.2 **Time is of the Essence.** Time and delivery of specified conforming quantities are of the essence in this contract. Vendor acknowledges that Coldwater Creek will incur costs and damages including, without limitation, lost profits, as a result of Vendor's failure to satisfactorily perform. Vendor must promptly notify Coldwater Creek in writing if Vendor will be unable to deliver, perform or complete all or any part of a Purchase Order by the date required. All costs, including shipping costs, incurred by Coldwater Creek due to Vendor's non-compliance with any Purchase Order shall be subject to chargeback.

3.3 **Packaging.** Goods will be delivered by Vendor in the packaging and containers, and using the labels, if any, specified by Coldwater Creek. Coldwater Creek shall determine and communicate to Vendor, and Vendor shall comply with, standard waste allowances for certain packaging, components, material, containers and labels. All Goods shall be packaged by Vendor in the cartons specified by Coldwater Creek (if any). All packaging and containers shall be in good condition and merchantable, sealed, clean and without imperfections or defects. Upon Coldwater Creek's request, Vendor will provide Coldwater Creek with an inventory of its waste related to such packaging, components, material, containers and labels, and will provide to Coldwater Creek a reasonable opportunity to inspect such waste before disposal.

3.4 **Shipping.** All Goods shall be packaged, labeled, and delivered to Coldwater Creek in accordance with the terms of the applicable Purchase Order, including the provisions of this Agreement, the Vendor Handbooks, the Shipping Instructions and the Related Documents. INCOTERMS 2000 shall govern delivery terms for shipments originating outside the United States, unless otherwise specified by Coldwater Creek. All packaging shall be adequate to preserve and protect the Goods, and to satisfy the requirements of the applicable carrier.

Vendor shall not furnish excess quantities, or substitute specifications, fabrics, styles, colors or sizes for any Goods without Coldwater Creek's prior written consent. Coldwater Creek will not be obligated to pay for any Goods not specified in the applicable Purchase Order, even if such Goods are provided as an accommodation.

3.5 *Acceptance.* Notwithstanding anything to the contrary in this Agreement, including any Purchase Order, the Vendor Handbooks, the Code of Conduct, or Related Documents, no inspection or other action or inaction by Coldwater Creek may be construed as acceptance of any Non-Conforming Goods, and will not in any way release or discharge Vendor from any liability for damages, or affect any other legal or equitable remedies otherwise available to Coldwater Creek. All Goods received are subject to verification of count. Payment for Goods shall not constitute acceptance.

3.6 *Definition of Non-Conforming Goods.* "Non-Conforming Goods" means Goods that (i) do not conform to the agreed product specifications, standards, or other terms of this Agreement, the applicable Purchase Order, the Certified Sample, the Vendor Handbooks, the Code of Conduct and the Related Documents; (ii) are not delivered in accordance with the applicable Purchase Order; (iii) violate any applicable law (including but not limited to applicable customs regulations, including any law or regulation pertaining to their manufacture or distribution); (iv) are defective; (v) infringe upon the intellectual property right of any third party, except to the extent such infringement is due to a design provided by Coldwater Creek; or (vi) are delivered in a quantity that exceeds the quantity set forth in the applicable Purchase Order.

3.7 *Non-Conforming Goods.* In addition to any other rights and remedies available to Coldwater Creek, Coldwater Creek may exercise any of the following rights with respect to Non-Conforming Goods: (i) reject (or revoke acceptance of) the entire shipment; (ii) accept the entire shipment; or (iii) accept any number of commercial units (i.e., an item of the Goods that can be sold at retail) and reject (or revoke acceptance of) the balance of the shipment. Acceptance of any late delivery or Non-Conforming Goods shall in no way bind Coldwater Creek to accept further deliveries under the applicable Purchase Order, or any other order, or be construed as a waiver of any rights of Coldwater Creek. Any Goods rejected or revoked may, at Coldwater Creek's option, be either returned to Vendor, at Vendor's expense, for full credit, resold for Vendor's account in any reasonable manner provided prior consent is received from Vendor, less Coldwater Creek's reasonable expenses, or stored for Vendor's account pending Coldwater Creek's receipt of reasonable instructions as to their disposition. Vendor will bear all risk of loss associated with rejected/revoked Goods and will promptly reimburse Coldwater Creek for all reasonable expenses and losses incurred by Coldwater Creek in connection therewith. Any Goods returned to Vendor or subject to Vendor's instructions as to disposition shall be subject to the restrictions set forth in Section 6.8.

3.8 *Inspection.* Coldwater Creek shall be entitled to rely upon Vendor's representations and warranties with respect to the Goods and shall not be obligated to unpack and inspect the Goods prior to resale. Coldwater Creek's payment for, retention, use or acceptance of Goods will in no case be deemed a waiver of Coldwater Creek's right to inspect the Goods at any reasonable time or place and in any reasonable manner, or a waiver of any breach of a

representation or warranty by Vendor, or a failure on the part of Vendor to provide conforming Goods.

## 4. FEES AND PAYMENT TERMS

4.1    *Payment Terms.*  Coldwater Creek will pay Vendor for Goods received in accordance with the terms of the applicable Purchase Order, subject to Vendor's submission of a correct invoice in accordance with Section 4.3, or by transferable irrevocable confirmed bankers' letter of credit.  Coldwater Creek shall have no obligation to pay, and is entitled to a prompt refund of any payments made, for any Non-Conforming Goods.  The purchase price of the goods shall be based on the FOB point designated on a Purchase Order unless otherwise mutually agreed. Payment for all purchases will be as designated on a Purchase Order.  If by transferable irrevocable confirmed bankers' letter of credit, to be established in favor of the supplier, all related goods must be consigned to Coldwater Creek Inc.  If an open account transaction terms are 75 days from the receipt of goods or a correct invoice as defined in Section 4.3, whichever is later.

4.2    *Taxes.*  Vendor shall pay and assume any and all taxes (excluding state sales and use taxes, where applicable), fees, imposts, or stamps required by virtue of the sale of the Goods to Coldwater Creek, except as may be otherwise indicated on the front of the applicable Purchase Order.

4.3    *Invoices.*  Invoices should be submitted separately for each shipment.  All invoices must: (i) include only items actually shipped; (ii) be marked with a unique identifying invoice number; (iii) correctly reference the applicable Purchase Order number, (iv) itemize the Goods delivered according to Coldwater Creek product number, size, color, quantities actually shipped, and unit price; (v) include the Coldwater Creek product number for each item; (vi) and include the name of the applicable Coldwater Creek business representative.  The preferred method of invoice delivery is an electronic invoice submitted via OB10.  Information regarding this program can be obtained at www.coldwatercreek.com/ob10.  Please see the details below for the different invoice delivery methods.

- Electronic Invoices
    - o   Do not mail paper invoices or include invoices with shipments;
    - o   Register with OB10 via a link on our website: www.coldwatercreek.com/ob10.

- Paper Invoices
    - o   Fax or mail invoices to:
        Accounts Payable
        P.O. Box 310
        Sandpoint, ID 83864
        Fax: 208-665-8547

Inquiries to the Accounts Payable Department:

> IMPORTANT:
> - Inquiries regarding payment status should be directed to the Accounts Payable Department via e-mail at: ap@thecreek.com.
>
> - Inquiries regarding electronic invoicing should be directed at: ob10help@thecreek.com.

Coldwater Creek retains the right to return and withhold payment for any invoice submitted that fails to comply with the requirements set forth in this Section 4.3. Coldwater Creek shall not be obligated to pay any invoices submitted later than ninety (90) days from the delivery of the Goods or the date the relevant charge was incurred.

4.4 **_Drawbacks._** Where appropriate vendor will assign to Coldwater Creek all drawback refunds available from the U.S. Customs in respect of Goods delivered under any Purchase Order, and Vendor will cooperate with Coldwater Creek in taking all steps necessary to obtain any such refund.

## 5. CONFIDENTIAL INFORMATION

5.1 **_Definition._** "Confidential Information" means all information in tangible or intangible form that is marked or designated as confidential or that, under the circumstances, should be considered confidential, disclosed by either Party (the "Disclosing Party") to the other Party (the "Receiving Party"), or otherwise obtained from the Disclosing Party, either directly or indirectly, in writing, orally or by inspection of tangible objects, including the existence and content of each Purchase Order and the relationship with the Vendor. Coldwater Creek Confidential Information further includes without limitation all nonpublic business, financial, marketing, customer, supplier, employee, and corporate information of Coldwater Creek and its subsidiaries and affiliates, including, without limitation, all proprietary information, Works, Coldwater Creek Materials, technical data, trade secrets, know-how, best seller information, research, mailing lists and mailing plans, cost information, final selection information, marked-up books, fiscal and calendar grids and results, terms of marketing and affiliate agreements with vendors and e-commerce entities, key marketing and merchandising reports, marketing databases, budgets, business plans, marketing strategies, unpublished financial information and statements, qualifications and skills of employees, contractors and consultants of Coldwater Creek. Confidential Information shall also include third-party Confidential Information the Disclosing Party is obligated to maintain in confidence.

5.2 **_Non-Use and Non-Disclosure._** The Receiving Party shall not, during or subsequent to the term of this Agreement, use Confidential Information of the Disclosing Party for any purpose whatsoever other than the performance of its obligations under this Agreement, or disclose or permit the disclosure of such Confidential Information to any third party. The Parties agree that Confidential Information will remain the sole property of the Disclosing Party, except as otherwise expressly set forth herein. The Receiving Party shall use at least the same efforts to protect the secrecy of and avoid disclosure and unauthorized use of the

Confidential Information of the Disclosing Party as it uses to protect its own Confidential Information, but in no event less than reasonable commercial efforts.

5.3 *General Exceptions.* Confidential Information does not include information which (i) has become publicly known and made generally available through no wrongful act of the Receiving Party, (ii) has been rightfully received by the Receiving Party from a third party who is authorized to make such disclosure, or (iii) is independently developed by the Receiving Party without use of or reference to the Disclosing Party's Confidential Information, as shown by documents and other competent evidence in the Receiving Party's possession.

5.4 *Legal Exceptions.* The Receiving Party may disclose any portion of the Disclosing Party's Confidential Information to the extent expressly required by law, governmental rule, regulation, executive order, court order, or in connection with a dispute between the Parties; provided that prior to making any such disclosure, the Receiving Party shall use its best efforts to: (i) provide the Disclosing Party with immediate prior written notice setting forth with specificity the reason(s) for such disclosure, including supporting documentation therefore, and the circumstances giving rise thereto; (ii) limit the scope and duration of such disclosure to the strictest possible extent; (iii) contest, and assist the Disclosing Party in contesting, such disclosure; (iv) assist the Disclosing Party in obtaining a protective order, sealed records, or similar official restrictions on such disclosure, at the Disclosing Party's expense; and (v) where appropriate and possible under the circumstances, execute with all third parties to whom any portion of the Disclosing Party's Confidential Information is so disclosed a confidentiality and nondisclosure agreement in form and scope at least as protective of such Confidential Information as the terms hereof.

5.5 *Unauthorized Disclosure.* The Receiving Party shall notify the Disclosing Party in writing upon the discovery of any unauthorized use or disclosure of any Confidential Information and cooperate with the Disclosing Party in every reasonable way to regain possession of such Confidential Information and to prevent further unauthorized use and disclosure thereof.

5.6 *Return of Confidential Information.* Upon the termination of this Agreement, or upon demand, the Receiving Party shall deliver to the Disclosing Party all Confidential Information of the Disclosing Party then in the Receiving Party's possession or control, including all copies thereof. Upon the Disclosing Party's request, the Receiving Party will at such time provide the Disclosing Party with a certificate signed by an officer of certifying that all of the Disclosing Party's Confidential Information has been returned.

## 6. INTELLECTUAL PROPERTY

6.1 *Ownership.* If Vendor, or any of its agents or contractors, alone or jointly with Coldwater Creek or third parties, designs, conceives of, develops, or offers any Goods or other work product exclusively for Coldwater Creek under any Purchase Order (collectively, "Works"), Vendor acknowledges and agrees that it retains no rights in, Coldwater Creek shall be the sole and exclusive owner of, and Vendor hereby transfers, conveys and assigns to Coldwater Creek, all right, title and interest in and to all Intellectual Property Rights in such Works. "Works" shall include, without limitation, the Goods, whether completed or works-in-

Case 14-10867-BLS   Doc 1914-1   Filed 10/24/18   Page 14 of 34

progress, product ideas and concepts, colors, designs, pictures, formulas, discoveries, inventions, specifications, processes, or any marks or works similar thereto. "Intellectual Property Rights" means all forms of proprietary rights, titles, interests, and ownership relating to patents, copyrights, trademarks, trade dresses, trade secrets, know-how, mask works, droit moral (moral rights), and all similar rights of every type that may exist now or in the future in any jurisdiction, including without limitation all applications and registrations for any of the foregoing, including renewals, and any modifications, derivations, improvements or adaptations thereof.

6.2  *Perfection of Rights.*  Vendor hereby agrees to cooperate with Coldwater Creek to perfect Coldwater Creek's ownership rights to the Works as set forth herein, including executing any assignment therefore, and will obtain, at its expense, such assignments from Vendor's employees, agents, and contractors as necessary to effectuate the purposes of this Article 6.  Vendor also agrees not to assert any moral rights under applicable copyright law with regard to the Works.  Where applicable and relevant to perfecting in Coldwater Creek any Intellectual Property Rights, or other rights specifically allocated to Coldwater Creek under this Article 6, and where such rights arise in or through Vendor, Vendor agrees to obtain at Vendor's expense when requested by Coldwater Creek, any other assignments of rights in such Work from the inventor, author or third parties in favor of Coldwater Creek, its successors and assigns.  If Coldwater Creek is unable for any reason, after reasonable effort, to secure Vendor's signature on any document needed in connection with the actions specified in this Article 6, Vendor hereby irrevocably designates and appoints Coldwater Creek and its duly authorized officers and agents as Vendor's agent and attorney-in-fact, which appointment is coupled with an interest, to act for and on Vendor's behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this Article 6 with the same legal force and effect as if executed by Vendor.

6.3  *Trademark License.*  Coldwater Creek hereby grants Vendor the right and license, with a limited right to grant sublicenses to Approved Contractors, to use the Coldwater Creek trademark and logo (the "Trademark") in accordance with the Vendor Handbooks for the sole and exclusive purpose of affixing the Trademark to the Goods (including packaging) manufactured and delivered to Coldwater Creek hereunder.  Vendor and its Authorized Contractors are granted no other right, title, or license to the Trademark or any other Coldwater Creek trademark, and are specifically granted no right or license to sublicense the Trademark except as expressly set forth herein.  Coldwater Creek is the sole owner of the Trademark and all goodwill associated therewith.  Any and all goodwill accruing from the use of the Trademark by Vendor and its contractors inures solely to the benefit of Coldwater Creek.  Neither Vendor nor any of its contractors shall knowingly and intentionally do anything that might harm the reputation or goodwill of the Trademark.  Vendor and is contractors shall not challenge Coldwater Creek's rights in or attempt to register the Trademark in any jurisdiction, or any mark confusingly similar to the Trademark, or take any action inconsistent with Coldwater Creek's rights in the Trademark.  If at any time Vendor or any of its contractors acquires any rights in or registrations or applications for the Trademark, or any other trademark, logo, trade name, or the like owned by Coldwater Creek, by operation of law or otherwise, it will immediately upon request by Coldwater Creek, and at no expense to Coldwater Creek, assign such rights, registrations, or applications to Coldwater Creek, along with any and all associated goodwill. Vendor will inform all of its Approved Contractors of the terms and conditions of this

Master Vendor Agreement
Revised 12/30/2008
Page 8

Agreement and will ensure that such Approved Contractors have agreed in writing to be bound by these terms and conditions before rendering any performance hereunder.

6.4 *Coldwater Creek Materials.* In order to perform the Services Vendor may have access to certain assets, materials and information of Coldwater Creek ("Coldwater Creek Materials"). Coldwater Creek Materials will include, without limitation designs, specifications, patterns, labels, molds, packaging, and materials produced by or licensed to Coldwater Creek, registered and unregistered trademarks and copyrights, and other proprietary or confidential information and trade secrets of Coldwater Creek. Vendor shall use Coldwater Creek Materials for the sole purpose of performing its obligations hereunder, and for no other purpose whatsoever without the prior written consent of Coldwater Creek. Vendor hereby acknowledges and agrees that Coldwater Creek will retain all rights, title, interests, and ownership of any kind in and to the Coldwater Creek Materials including, without limitation, all Intellectual Property Rights therein. Vendor agrees to receive and hold such property of Coldwater Creek in trust solely for such purposes, including without limitation taking all reasonable measures to protect and secure the same and to insure said property, at Vendor's expense, for the benefit of Coldwater Creek against all loss and damage from whatever cause for its full insurable value.

6.5 *Inspection & Return.* All Coldwater Creek Materials and all copies thereof, as applicable, will at all times be subject to: (i) inspection by Coldwater Creek personnel at any time with or without notice; and (ii) return to Coldwater Creek promptly upon Coldwater Creek's request. The foregoing right of inspection will include the right to inspect and audit any facility at which any Coldwater Creek Materials are located.

6.6 *Publicity.* Vendor shall not use Coldwater Creek's name or any Trademark of Coldwater Creek in any advertising, promotion, press release, or other publicity without Coldwater Creek's prior written consent.

6.7 *Enforcement of Intellectual Property.* Vendor will immediately notify Coldwater Creek of any infringing or potentially infringing use of the Trademark or any Coldwater Creek Materials of which it is aware. Coldwater Creek will have the absolute right to direct all enforcement and defense activities connected with the Trademark or Coldwater Creek Materials, including any necessary legal action in whatever jurisdiction Coldwater Creek deems appropriate in its sole judgment.

6.8 *Disposal of Goods.* No Goods rejected, returned, or remaining for any reason under any Purchase Order, whether or not such rejection is disputed by Vendor, shall be resold, distributed, or otherwise disposed of by Vendor unless all Trademarks, labels, tags and other indicia identifying Coldwater Creek shall have been first removed from such Goods and properly disposed, including all packaging and boxes used with such Goods. Upon request Vendor shall provide a certificate from an officer of Vendor showing its compliance with this Section.

## 7. REPRESENTATION AND WARRANTIES

7.1 In addition to and without prejudice to other warranties and covenants of Vendor, express or implied by law, Vendor represents, warrants and covenants to Coldwater Creek that:

(a)    Vendor has the right and authority to enter into this Agreement and to perform its entire obligation hereunder, and under the applicable Purchase Order, the Vendor Handbooks, Code of Conduct, and Related Documents.

(b)    This Agreement, and each Purchase Order entered into hereunder, will constitute a legal, valid and binding obligation of Vendor, in accordance with their terms, and will not violate any law, rule, regulation, contract or agreement to which Vendor is subject.

(c)    Vendor has good and marketable title to all Goods, free and clear of all liens and encumbrances, and has the power to, and in each case shall, upon delivery transfer the Goods to Coldwater Creek free and clear of all liens, encumbrances and interests of any kind.

(d)    All Goods (including all materials or components thereof) delivered to Coldwater Creek will be:

(i)    new and unused, of first quality, merchantable, free from defects in design, materials and workmanship, fit for the particular purposes for which they are to be used or resold, able to pass without objection in the trade, and manufactured in strict conformity with Coldwater Creek specifications, descriptions, approved samples, prototypes, and all certifications or other statements made by Vendor or its agents;

(ii)    produced, labeled, packaged, tested, handled, and shipped in compliance with this Agreement, the applicable Purchase Order, the Vendor Handbooks, the Vendor Code of Conduct, and the Related Documents, including other instructions which have been or may from time to time be furnished to Vendor, and with all laws, rules, regulations, policies, labor standards, and standards of the United States, or of any other jurisdiction, applicable to Vendor, the Goods (including all materials or components thereof), and to the conditions or process of their manufacture, whether or not specifically referred to herein and whether relating to country of origin, product content, quality, safety, environmental matters, or otherwise ("Laws and Regulations");

(iii)    prepared for importation and, where applicable, imported in compliance with Laws and Regulations of the United States including, without limitation, all rules, regulations and policies of the United States Bureau of Customs and Border Protection ("U.S. Customs") in effect from time to time (each of which is incorporated herein by reference);

(iv)    Free of any adulteration, misbranding, defects or false or deceptive invoicing or advertising; and

(v)    Produced in quantities which are not less than 2.5%, nor more than 2.5%, of the quantity ordered by Coldwater Creek.

(e)    *Labor Standards and Country of Origin.*    For each contract entered into hereunder, Vendor shall comply with all requirements of Exhibit A: Certification of Compliance with the Code of Conduct, as well as all applicable requirements pertaining to

country of origin, including providing Coldwater Creek will all information reasonably requested in connection with Vendor's compliance with the Code of Conduct, as well as all other workplace and human rights laws and regulations (including compliance by Vendor's contractors).

(f)     The Goods (including all materials and components thereof), except for designs provided by Coldwater Creek:

(i)     are the original work of authorship of Vendor, or Vendor has obtained from the original author all necessary rights to the Goods to perform its obligations under this Agreement and to transfer and assign to Coldwater Creek, where applicable, all rights of ownership to the Goods, including any and all Intellectual Property Rights; and

(ii)     do not infringe or violate any Intellectual Property Rights held by any third party.

(g)     Vendor is able to comply and has fully complied with this Agreement, and that Vendor, its employees, agents, vendors, subcontractors and suppliers are able to comply and have fully complied with all Laws and Regulations and the Code of Conduct, including without limitation country of origin and other requirements of U.S. Customs and related agencies, and all similar requirements of other applicable jurisdictions, with respect to all Goods sold to Coldwater Creek.

(h)     Vendor has procured and shall maintain such licenses and permits as are required to fully perform this Agreement and any contract created under this Agreement.

7.2   *Supplier Warranties.*  In addition to the warranties contained in Section 7.1, Vendor shall procure for Coldwater Creek the benefit of any warranties or other rights conferred on Vendor by its vendors, subcontractors and suppliers. Vendor will promptly provide Coldwater Creek or its designated representative with any information reasonably requested by Coldwater Creek in order to verify compliance with this Article 7.

7.3   *Recordkeeping.*  Vendor agrees to maintain, and to require its suppliers to maintain, for a period of at least five (5) years (or longer period if specified by Coldwater Creek or required pursuant to applicable Laws and Regulations) following delivery of Goods to Coldwater Creek, all information and physical specimens relating to the Goods, or their design development, production and sale, to establish Vendor's compliance with the terms of this Agreement, the contents and properties of Goods, including the amount of raw materials used and the number of Goods produced, and to satisfy all safety, content and other regulatory requirements that may relate to Goods, or their production or sale. Vendor agrees to provide any such information to Coldwater Creek or Coldwater Creek's representative upon Coldwater Creek's request.

7.4   *Right of Inspection.*  Coldwater Creek shall have the right, without notice, to conduct audits and inspections of any and all facilities and information of Vendor relating to the manufacture, shipment, and sale of Goods, including any and all facilities and information of any subcontractors or supplier of Vendor relating to the Goods, or where any item bearing a

Coldwater Creek Trademark is manufactured, handled, or located. Vendor shall promptly produce and permit Coldwater Creek to copy any and all information and physical specimens relating to the foregoing. Coldwater Creek agrees to maintain the confidentiality of, and not to disclose the confidential, proprietary or trade secret information provided by Vendor pursuant to this Section except in connection with the enforcement of this Agreement, as necessary or appropriate to satisfy any safety issue or regulatory requirement that may be contingent on such information, to comply with any Laws or Regulations or to avoid civil or criminal liability, penalty or censure. Vendor shall bear all costs and expenses relating to any third party monitors engaged by Coldwater Creek for the purpose of monitoring Vendor's compliance with the Code of Conduct or other workplace or human rights laws and regulations.

7.5 *Survival.* Any disclaimer of these express warranties, of any implied warranties of merchantability or fitness for a particular purpose, or other contractual obligations, or limitation of remedies for breach of warranties shall be ineffective. All remedies and warranties shall survive inspection, tests, acceptance, and payment by Coldwater Creek.

## 8. INDEMNIFICATIONS

8.1 *Indemnity.* Vendor agrees to indemnify, defend (with counsel approved by Coldwater Creek), compensate and hold harmless Coldwater Creek, its parent and affiliated corporations, and their respective directors, officers, shareholders, employees, agents, customers, successors and assigns, from and against any and all claims, liability, loss, damage, penalty and expense (including reasonable attorneys' fees, other professional fees and other costs and expenses) relating to, based upon or resulting from any claim, demand, suit, litigation or proceeding pertaining to this Agreement or any Purchase Order executed hereunder, or any Goods, whether arising before or after delivery, which involves or alleges any breach of Vendor's representations and warranties anywhere in this Agreement including, but not limited to those contained in Section 7, as well as in any Purchase Order; violations of the Code of Conduct; personal injury or property damage; defective Goods or the failure of the Goods to otherwise comply with any express or implied warranties of Vendor; the purchase, sale or use of the Goods; any breach of this Agreement or any Purchase Order, the Vendor Handbooks, or the Code of Conduct; any infringement or alleged infringement of any patent, copyright, trade dress, trade secret, trademark, or the like connected with the Goods, except for designs provided by Coldwater Creek; and any negligent or wrongful act or omission by Vendor, its employees, subcontractors, or agents. Vendor shall diligently and in good faith perform its obligations under this Section 8 including, without limitation, keeping Coldwater Creek timely informed regarding all material aspects of its defense and indemnification. Coldwater Creek, at its option and expense, may participate in the defense of any such Claim or proceeding including, without limitation, participating in all substantive meetings, telephone conferences, and negotiations with respect to any claims. In no event shall Vendor enter into any settlement of any Claim against Coldwater Creek without Coldwater Creek's prior written approval, which approval shall not be unreasonably withheld. Coldwater Creek's approval of any settlement shall not be deemed a waiver by Coldwater Creek of any insurance coverage that may be available to Coldwater Creek.

8.2 *Failure to Defend.* If Vendor fails to diligently or satisfactorily assume and pursue the defense of Coldwater Creek as required under Section 8.1, Vendor shall reimburse

Coldwater Creek on a monthly basis for Coldwater Creek's defense through separate counsel chosen and retained by Coldwater Creek. Even if Vendor assumes the defense of Coldwater Creek with acceptable counsel, Coldwater Creek, at its sole option and expense, may participate in the defense with counsel of its own choice without relieving Vendor of any of its obligations hereunder. In connection with the defense of any Claim to which Coldwater Creek is a party, Coldwater Creek may have its own counsel as co-counsel of record in any court action based on such Claim at its own cost and expense.

8.3  *No Limitation.*  Vendor's obligation to indemnify Coldwater Creek under this Article 8 will not be limited in any way by any limitation on the amount or type of damages, compensation, penalty or benefits payable by or for Vendor under any statutory scheme, including without limitation, any scheme relating to workers compensation, disability, or other employee benefits.

## 9. INSURANCE

9.1  *Requirements.*  Without limiting any other obligations or liabilities of the Vendor, the Vendor will provide at its own expense during the term of this Agreement at least the following insurance coverage with insurers having an A.M. Best rating acceptable to Coldwater Creek: (a) Commercial General Liability in the minimum amount of One Million Dollars ($1,000,000) per Occurrence and Two Million Dollars ($2,000,000) Aggregate covering Bodily Injury, Property Damage, Products and Completed Operations, Personal Injury and Advertising Liability for any and all losses to Coldwater Creek, including their affiliates, third parties, or employees, due to the actions of Vendor or its product, any employee of Vendor or any contractor engaged by Vendor, including coverage for Vendor's contractual liability under the Indemnification section hereunder; and (b) Workers' Compensation and Employers Liability Insurance with statutory amounts (where required by law) and with a minimum coverage amount of Five Hundred Thousand Dollars ($500,000).

9.2  *Clauses.*  Vendor will add Coldwater Creek as an additional insured to the Commercial General Liability policy. Vendor's insurance will be primary, and any insurance maintained by Coldwater Creek will be excess to and not contribute to Vendor's insurance. Every policy required under this Section will contain the following clause: "No reduction, cancellation or expiration of this policy will become effective until thirty (30) days from the date written notice is actually received by Coldwater Creek Inc." Vendor immediately will obtain replacement insurance complying with these requirements upon any cancellation or material revision of its coverage. Within thirty (30) days of execution of this Agreement and annually thereafter, Vendor will send Certificate(s) of Insurance confirming such coverage to Coldwater Creek Inc., Attn: Administrative Assistant to CFO, One Coldwater Creek Drive, Sandpoint, ID 83864. Failure to provide such certificate in the manner and time required or to maintain the insurance coverage specified herein at all times during the term of this Agreement shall be deemed a material breach of this Agreement.

## 10. SEIZURE OR RECALL

10.1  *Vendor Cooperation.*  If any of the Goods are the subject of a seizure by any governmental agency, or if any government agency requests or suggests that any of the Goods

be recalled or withdrawn from the market or consumers at any level, or Coldwater Creek deems such recall or withdrawal necessary, Vendor shall cooperate with Coldwater Creek in good faith in connection with such seizure, recall, or withdrawal, including taking all actions reasonably requested by Coldwater Creek in connection therewith.

10.2 *Liability of Vendor.* If any seizure, recall, or withdrawal referred to in Section 10.1 is due to any alleged defect in the design, workmanship, or materials of the Goods, or because the Goods are Non-Conforming or not in compliance with any Laws or Regulations, and except where the cause of the seizure, recall, or withdrawal was due to a design provided by Coldwater Creek, Vendor shall immediately indemnify and reimburse Coldwater Creek for the following: (a) all costs and expenses of notifying the public and/or consumers of said recall or withdrawal, (b) all freight charges actually incurred by Coldwater Creek, or paid by Coldwater Creek to its customers for retrieval and, where applicable, replacement, of the Goods, (c) all service charges, gift certificates, or other monies actually paid by Coldwater Creek to its customers in line with the Vendor Handbooks or its normal practices in connection with the retrieval and replacement of the Goods, and (d) all costs, damages, awards, administrative costs and reasonable legal and consulting fees incurred by Coldwater Creek in connection with any such seizure, recall or withdrawal. Nothing contained in this Article 10 shall limit or relieve Vendor of its obligations under Article 8.

## 11. TERM AND TERMINATION

11.1 *Term.* Except as otherwise provided herein, this Agreement will remain in effect unless and until terminated by either Party following at least ninety (90) days prior written notice. Termination under this Section 11.1 will not operate to relieve either Party of its obligations under any Purchase Order executed hereunder, whether or not such Purchase Order is fully performed at the time of termination.

11.2 *Termination of Purchase Orders.* Coldwater Creek may without cause terminate any Purchase Order, in whole or in part, by providing written notice to Vendor. Upon receipt of said notice, Vendor shall immediately discontinue all work under the Purchase Order, and shall take all steps necessary to terminate, upon terms satisfactory to Coldwater Creek, all existing orders or contracts for materials, facilities, or supplies which Vendor may have entered into in connection with the Purchase Order, as well as to preserve and protect work already in progress. Coldwater Creek's sole liability for termination under this Section shall be payment for work already completed or in progress, including raw materials, at the time the notice of termination is issued, as evidenced by Vendor's written records, and only to the extent Vendor is unable to mitigate such amounts through the sale or other use of such work in accordance with the terms of this Agreement.

11.3 *Insolvency.* This Agreement, and any or all current and outstanding contracts created hereunder, shall be deemed immediately terminated, without the requirement of further action or notice by either Party, in the event that the other Party: (i) shall become subject to voluntary or involuntary bankruptcy, insolvency, receivership, conservatorship or like proceedings pursuant to applicable law; or (ii) ceases to conduct its normal and customary business operations.

11.4 *Coldwater Creek Breach.* Vendor may terminate this Agreement at any time in the event of a material breach of the terms of this Agreement by Coldwater Creek if such breach is not cured within thirty (30) days of receipt of written notice thereof, or such additional time as the Parties may agree in writing.

11.5 *Vendor Breach.* Coldwater Creek shall have the right to terminate immediately this Agreement and/or any or all current and outstanding Purchase Orders, whether or not in the process of manufacture, and to reject any Goods or revoke acceptance of any Goods previously accepted, without liability, should Vendor be in material breach of any of its obligations hereunder, or under any Purchase Order. For the purposes of this clause, a material breach shall include without limitation, the occurrence of any of the following:

     (a)   Vendor is in breach of or is not in compliance with any of the representations or warranties contained in this Agreement or any Purchase Order, the Vendor Handbooks, or the Code of Conduct, or any of such representations or warranties shall prove to be untrue at any time during the term of this Agreement;

     (b)   Vendor fails or is unable to timely deliver conforming Goods in accordance with any contract created under this Agreement;

     (c)   Vendor, or any of its vendors, subcontractors or suppliers fails to perform or comply with any obligation pertaining to country of origin for any Goods;

     (d)   After inspection of the facilities or records of Vendor, or any of its vendors, subcontractors or suppliers as permitted hereunder, Coldwater Creek is unable to verify to its satisfaction compliance with Laws and Regulations or the Vendor Code of Conduct, including without limitation United States laws and/or regulations relating to the country of origin of or labor standards applicable to Goods produced for or sold to Coldwater Creek; or

     (e)   Vendor, or any of its vendors, subcontractors or suppliers is determined by Coldwater Creek or otherwise to be not in compliance with or to have violated any Laws and Regulations or the Vendor Code of Conduct, including without limitation laws and/or regulations relating to the country of origin of or labor standards applicable to Goods produced for or sold to Coldwater Creek, or the laws and/or regulations of any country or countries wherein any portion of Goods contracted for by Coldwater Creek are to be manufactured, or appears on a published U.S. Customs list of targeted companies or suspected violators of U.S. import laws.

11.6 *Anticipatory Breach.* If Coldwater Creek has reasonable grounds for insecurity as to Vendor's ability to perform under this Agreement, or any Purchase Order, it may demand adequate assurance of performance and require a response to be received from Vendor within five (5) business days (which the Parties agree is reasonable). If Vendor is unable to provide adequate assurance of due performance, as determined by Coldwater Creek in its sole discretion, then Coldwater Creek may immediately terminate such Purchase Order and any other Purchase Order for like Goods.

11.7 *Coldwater Creek's Purchase Rights.* Coldwater Creek's inclusion of any Goods in its offerings is expected to create enlarged demand for such Goods. If Vendor fails to timely

deliver conforming Goods, or is otherwise in breach of a Purchase Order, Coldwater Creek may terminate this Order and shall have the right to manufacture and sell substitute Goods using alternate sources, regardless of any intellectual property rights Vendor may retain in the Goods. If Vendor retains any intellectual property rights in the Goods and within 36 months of the date of this Order is unable or unwilling to timely provide Coldwater Creek with conforming Goods in the quantities sought and at the price stipulated in the most recent Purchase Order for the Goods, or as otherwise agreed by the Parties, then Vendor grants Coldwater Creek an irrevocable, royalty-free worldwide right and license, with the right to grant sublicenses, to manufacture and sell such quantities of the Goods using alternate sources, provided Coldwater Creek first purchases at a price no higher than the price set forth in the most recent Purchase Order those remaining quantities of the Goods readily available from Vendor. Notwithstanding the foregoing, Vendor hereby acknowledges that it is not relying upon Coldwater Creek in any way to make further purchases of the Goods from Vendor, that Coldwater Creek is not obligated to make any future purchases of the Goods from Vendor, and that nothing contained herein prohibits Coldwater Creek from placing other orders for the Goods from any third party.

11.8  *Survival.*  The respective rights and obligations of the Parties under the provisions of Sections 5, 6, 7, 8, 9, 10, 12 and 13 will survive termination hereof and will remain in full force and effect.

## 12. REMEDIES

12.1  *Chargebacks.*  Vendor acknowledges and agrees that Coldwater Creek shall be entitled to certain chargebacks, credits or refunds ("Chargebacks"), as further set forth in the Vendor Handbooks, due to Vendor's failure to comply with the terms and conditions of this Agreement and the Related Documents.

12.2  *Remedies.*  In the event of a termination, cancellation, rejection or revocation of acceptance by Coldwater Creek hereunder or any breach of this Agreement by Vendor, Vendor shall not be entitled to any payment, but shall be obligated to reimburse and make Coldwater Creek whole for all expenses, (including administrative costs) claims, fees (including reasonable attorneys' fees, other professional fees and other costs and expenses), losses (including losses of profit and losses of quota), penalties, costs and damages suffered by Coldwater Creek. Coldwater Creek shall be entitled to set off any or all of the foregoing against any monies then owing, or claimed to be owing, by Coldwater Creek or its agents to Vendor.

12.3  *Injunctive Relief.*  The Parties acknowledge and agree that a breach by Vendor of Sections 5 and 6 is likely to give rise to irreparable injury to Coldwater Creek for which they will have no adequate remedy at law. Accordingly, in the event of any actual or threatened breach of such Sections by Vendor or any Vendor employee, agent, or contractor, Coldwater Creek will be entitled to obtain injunctive relief, including specific performance in addition to all other remedies available to it at law or in equity, all without need to post any bond or security of any nature.

12.4  *Remedies Cumulative.*  No remedy conferred by any provision of this Agreement or the Related Documents is intended to be exclusive of any other remedy, and each and every

remedy will be cumulative and will be in addition to every other remedy under this Agreement or now or hereafter existing at law, in equity, by statute, or otherwise.

## 13. GENERAL TERMS

13.1 *Relationship of the Parties.* The sole relationship between the Parties will be that of independent contracting parties. Nothing herein will be construed as creating an agency, joint venture, partnership, or other similar relationship between Coldwater Creek and Vendor, or Coldwater Creek and any Vendor employee, agent, or contractor.

13.2 *Assignment.* Vendor will neither assign this Agreement nor any contract created under this Agreement, nor subcontract the furnishing of any completed or substantially completed Goods, without the prior written approval of Coldwater Creek (which approval Coldwater Creek may withhold in its sole discretion), and no permitted assignment or subcontracting will relieve Vendor of its obligations hereunder. Any attempted assignment in violation of this Section shall be null and void. This Agreement will be binding upon and will inure to the benefit of the Parties and their respective successors and permitted assignees. Coldwater Creek shall have the right, at its sole option and at any time during the term of this Agreement and for any reason whatsoever, assign this Agreement and all Related Documents to a subsidiary, a parent or a subsidiary of a parent.

13.3 *Limitation of Liability.* Under no circumstances will Coldwater Creek be liable to Vendor hereunder, or as a result of any cancellation of any Purchase Order, or otherwise, for any amount in excess of the purchase price set forth in the effected Purchase Order, if any. ALL CLAIMS FOR INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, WHETHER BASED UPON THEORIES OF CONTRACT, TORT, OR OTHERWISE, ARE HEREBY WAIVED BY VENDOR.

13.4 *Force Majeure.* Neither Party will be liable for delays in delivery or performance in accordance with the provisions, specifications and schedules attached hereto caused by fire, earthquake, tornado, flood, embargo, war, riot, governmental decrees, act of God, strikes or other cause beyond the reasonable control of the affected Party and not correctable or avoidable through exercise of commercially reasonable means (hereinafter *"force majeure"*). In any such case, the affected party will be relieved of its obligation to perform but only to the extent such performance is prevented, hindered, or delayed by the *force majeure* and subject to such Party using its best efforts to perform, or to have such performance rendered either at other facilities which it operates or through subcontracting the effected performance to other third parties for the duration of any such occurrence, subject in all cases to Coldwater Creek's prior consent.

13.5 *Waiver.* Any of the provisions hereof may be waived by the Party entitled to the benefit thereof. Neither Party will be deemed, by any act or omission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by the waiving Party, and then only to the extent specifically set forth in such writing. A waiver with reference to one provision or event will not be construed as continuing or as a bar to or a waiver of any right or remedy as to a subsequent provision or event.

13.6 *Notice.* Any notice, request, or other document to be given hereunder to any Party will be in writing signed by the Party giving notice and, unless otherwise specified herein, delivered personally or sent by Certified Mail, Return Receipt Requested, or by overnight mail, addressed as set forth above. Either Party may change its address for notice by giving notice to the other Party as set forth above.

13.7 *Governing Law and Jurisdiction.* This Agreement will be governed by and construed in accordance with the local laws of the State of Idaho, USA, without reference to its conflicts of laws principles. The Parties consent to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in Bonner or Kootenai Counties, Idaho, USA for all purposes related to this Agreement or any contract related to this Agreement. To the extent permitted by law, the Parties hereby waive the right to a trial by jury in any action, proceeding or counterclaim arising out of, or in any way connected with this Agreement or any contract related to this Agreement. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

13.8 *Costs and Attorneys' Fees.* The prevailing Party in any demand or dispute arising hereunder will be entitled to recover from the other Party the costs of resolving the dispute, including reasonable attorneys' fees and court costs. The provisions of this Section 13.8 may be enforced by any Court of competent jurisdiction.

13.9 *Severability.* If the application of any provision hereof to any particular facts or circumstances will be held to be invalid or unenforceable, then: (i) such provision will be reformed to the extent necessary to render such provision valid and enforceable when applied to such particular facts or circumstances; and (ii) the validity and enforceability of such provision as applied to any other particular facts or circumstances, and the validity and enforceability of all of the other provisions hereof, will in no way be affected or impaired thereby.

**Vendor**                                           **Coldwater Creek U.S. Inc.**


_____                          _____
Authorized signature                                 Georgia Shonk-Simmons, President

EDDY YUEN
_____
Printed name

MANAGING DIRECTOR
_____
Title

Exhibit A

# Coldwater Creek
## Code of Conduct

This code of conduct applies to all factories utilized in the production of merchandise sourced by Coldwater Creek U.S. Inc., its parent or any of its subsidiaries, agents or affiliates.

Coldwater Creek U.S. Inc. recognizes that local customs and laws vary from one region of the world to another. However, the issue of human rights, as it pertains to the relationship of an employer and employee, transcend geographical boundaries. The intention of this Code is to communicate our expectations of our business partners.

- **General Principle –**
  Coldwater Creek, Inc. requires all vendors and factories to abide by all local laws and regulations, and for the purpose of supporting this Code specifically those relating to labor and environmental issues of the country in which they operate.

- **Child Labor –**
  No person shall be employed who does not meet the applicable minimum legal age requirement or at an age younger than 16 or younger than the age for completing compulsory education in the country of manufacture where such age is higher than 16.

  Participating factories shall maintain official documentation that proves the date of birth of each worker. In cases where such official documentation is not available, the factory shall establish a reliable method of assessment of age.

- **Forced Labor –**
  Employers will not use involuntary labor of any kind, including involuntary prison labor, debt bondage or forced labor by governments.

- **Wages and Benefits –**
  Employers will set the level of wages to be equal with either local law or the accepted industry standard whichever is greater. All legally required benefits must be provided.

  Only deductions that are required or explicitly permitted by law are allowed to be taken against wages.

  Employees will be paid for overtime hours at such a rate as is legally required, or if no legal requirement exists the employee will be compensated at their regular hourly wage.

- **Working Hours –**
  Employers will abide by all regulations and laws governing hours worked. Each employee shall be allowed one day off in every seven. All overtime must be voluntary and be compensated for under the guidelines stated above.

- **Non-Discrimination –**
  Employers shall not discriminate on the basis of race, religion, sex, nationality, political opinions, age, disability, sexual orientation, maternity or marital status. Employees will be hired on their ability to perform the job.

- **Disciplinary Practices / Coercion –**
  All employees will be treated with dignity and respect.  No employee will be subjected to physical or corporal punishment.  Nor will any employee be subjected to sexual or psychological abuse, or verbal harassment.

- **Health and Safety –**
  Employers will provide a working environment that complies with all local rules, regulations and laws as they relate to the health, welfare and safety of the employees.

- **Freedom of Association –**
  Employers will not impede an employee's right to peacefully and freely associate, organize or bargain collectively.

- **Environment –**
  Employers will abide by all applicable environmental laws and regulations as they relate to the safe and lawful handling of and removal of hazardous chemicals, and other industrial waste.
  Factories shall work to eliminate the use of toxic and hazardous substances from the production process.

- **Documentation and Inspection –**
  Employers shall maintain on file documentation needed to demonstrate compliance with this Code and shall make it available for review upon request.  The factory agrees to submit to labor practices assessments or inspections with or without prior notice.

# Exhibit B

# Exhibit B

***** PURCHASE ORDER COVER SHEET *****

# COLDWATER CREEK

Date:        Monday, DEC 09, 2013

To:          DELTA GLOBAL SOURCING LTD
             CWCPO@DELTASOURCING.COM.HK

From:        Inventory Planning
Company:     Coldwater Creek

PO #:        5100684600

Subject:     PO from Camille Balfanz at Coldwater Creek


Dear Preferred Vendor:

Following is a Purchase Order ("Order") issued by Coldwater Creek Inc. or one of its direct or indirect subsidiaries (collectively, referred to as "Coldwater Creek").  This Order constitutes our offer to purchase the goods as stipulated therein.

Please Note: Our order acceptance policy has changed.
Notwithstanding anything to the contrary contained elsewhere in the Purchase Order or in any other agreement between Vendor and Coldwater Creek (including, without limitation, Section 1 of Coldwater Creek's preprinted Purchase Order Terms and Conditions, and the applicable provisions of any Master Vendor Agreement), if Vendor does not expressly accept or decline this Purchase Order within seventy-two (72) hours after Vendor's receipt hereof, then Vendor shall be deemed to have accepted and agreed to all terms of this Purchase Order.  Any discrepancies or exceptions in price, delivery, shipping instructions, or other specifications related to this Order must be noted and directed to the Coldwater Creek Inventory Planning Department along with any questions or instructions you may have.

You must also comply with the requirements and specifications found in the applicable Coldwater Creek Vendor Handbooks, and your Master Vendor Agreement (if applicable).  Should you have any questions regarding Vendor Handbooks or need additional copies, please call the Quality Compliance Manager at (208) 265-7053.

The Start Ship Date specified on each Order must be strictly adhered to for the fulfillment of all obligations under the Order.  Goods must not be in transit prior to the Start Ship Date but must be delivered to our Distribution Center prior to the Cancel Date.  Goods with terms of FOB foreign port must be delivered to our designated freight forwarder on or before the Due at Frt Forwarder Date.  If, for any reason, the Due at Frt Forwarder or Cancel Date cannot be met, you must immediately notify the appropriate contact at Coldwater Creek with the nature of the delay.

Our Order number must appear on all packages, correspondence, packing slips, and invoices.  Goods specified in this Order not received on or before the Cancel Date will be refused or returned at your risk and expense and the Order cancelled.

Coldwater Creek reserves the right to assess appropriate penalties and/or chargebacks for any expenses or inconvenience incurred due to late, undelivered, or improper shipments.

Your acknowledgment of receipt and acceptance of this Order must be returned electronically to the sender as a digital image (PDF or like format).

Revised 02/22/2013

Page 1 of 4

**PO Number 5100684600**

## Coldwater Creek Purchase Order Terms and Conditions

In this Purchase Order ("Order") "Vendor" means the party with whom this Order is placed, "Buyer" means Coldwater Creek Inc. or one of its direct or indirect subsidiaries, and "Goods" means those items ordered by Buyer hereunder, as each is shown on the face of this Order. By accepting this Order, Vendor expressly warrants, represents, and agrees as follows:

1. Vendor Acceptance: This Order, including the Coldwater Creek Vendor Handbooks, Master Vendor Agreement, Code of Conduct and Routing Instructions (Related Documents), the receipt of which is hereby acknowledged by Vendor, together with all attachments, and any agreements and documents to which this Order attaches or is incorporated, constitute the entire agreement between the Parties and supersede and merge all prior proposals and understandings between the Parties pertaining to the subject matter hereof. Acceptance of this Order is strictly limited to the terms and conditions contained and incorporated herein. No modification of the terms of this Order shall be binding upon Buyer unless approved in writing by an officer of Buyer. The offer contained in this Order shall be void if not accepted within 14 days of issuance.

2. Delivery: Vendor will deliver Goods to Buyer (or its authorized agent) at the time and delivery location specified in this Order. Title and risk of loss for the Goods will remain with Vendor up to the point of delivery of conforming Goods to Buyer. Time and delivery of specified conforming quantities are of the essence in this contract. Vendor acknowledges that Buyer will incur costs and damages including, without limitation, lost profits, as a result of Vendor's failure to satisfactorily perform. Vendor must promptly notify Buyer in writing if Vendor will be unable to deliver, perform or complete all or any part of this Order by the date required. All costs, including shipping costs, incurred by Buyer due to Vendor's non-compliance with this Order shall be subject to chargeback. Except as may be otherwise indicated on the front of this Order, Vendor shall pay and assume any and all taxes (excluding state sales and use taxes, where applicable), fees, imposts, or stamps required by law by virtue of the sale of the Goods to Buyer. Payment for Goods shall not constitute acceptance. INCOTERMS 2000 shall govern delivery terms for shipments originating outside the United States, unless otherwise specified by Buyer.

3. Warranties: Vendor expressly warrants that all Goods provided under this Order are merchantable, free from defects of design, materials, and workmanship, fit for the particular purposes for which they are to be used or resold, conform to the specifications and conditions set forth in this Order, and able to pass without objection in the trade. These warranties run in favor of the Buyer and are extended to the ultimate consumer. If this Order is terminated, the warranties apply as to the Goods delivered. Vendor shall, at its own expense, cure any breach of warranty promptly upon notice; if it fails to do so Buyer shall have the right to cure, and Vendor shall indemnify Buyer against the cost thereof. Vendor further warrants that it has good title to all Goods, and has the power to, and in such case shall, transfer the Goods to Buyer free and clear of all liens, encumbrances and interests of any kind. All Goods (including all materials or components thereof) delivered to Buyer will be produced, labeled, packaged, tested, handled and shipped in compliance with this Order and with all laws, rules, regulations, policies, labor standards, and standards of the United States, or of any other jurisdiction applicable to Vendor, and to the condition or process of their manufacture.

4. Buyer's Property: Vendor agrees that it retains no right in and that Buyer is the sole and exclusive owner and Vendor transfers and assigns to Buyer all right title and interest in Goods produced exclusively for Buyer under this Order. Buyer grants to Vendor the right and license to use Buyer#s trademarks and logos ("Trademark") in accordance with the Vendor Handbooks for the sole and exclusive purpose of affixing the Trademark to the Goods manufactured and delivered to Buyer hereunder. Buyer is the sole owner of the Trademark and all goodwill associated therewith. Any and all goodwill accruing from the use of the Trademark by Vendor inures solely to Buyer#s benefit. In producing the Goods under this Order Vendor may have access to certain of Buyer#s materials, including but not limited to, designs, specifications, patterns, packaging or other materials produced by or licensed to Buyer, registered and unregistered trademarks and copyrights and other proprietary information ("Buyer Materials") Vendor shall use such Buyer Materials for the sole purpose of performing its obligations hereunder and for no other purpose whatsoever. Vendor agrees to hold such Buyer Materials in trust solely for such purposes and take all reasonable measures to protect and secure the same.

5. Vendor Breach: Buyer shall have the right to terminate immediately this Order, and/or any or all current and outstanding orders, whether or not in the process of manufacture, and to reject any Goods or revoke acceptance of any Goods previously accepted, without liability, should Vendor fail to timely deliver conforming Goods, or otherwise be in breach of this Order, including any agreement into which this Order is incorporated. In addition to any other rights and remedies available to Buyer, Buyer may exercise any of the following rights with respect to any non-conforming Goods: (a) reject (or revoke acceptance of) the entire shipment, (b) accept the entire shipment, or (c) accept any number of commercial units, and reject (or revoke acceptance of) the balance of the shipment. Acceptance of any late delivery or non-conforming Goods shall in no way bind Buyer to accept further deliveries under this or any other order, or be construed as a waiver of any rights of Buyer. Any Goods rejected or revoked may, at Buyer's option, be either returned to Vendor, at Vendor's expense, for full credit, resold for Vendor's account in any reasonable manner provided prior consent is received from Vendor, less Buyer's reasonable expenses, or stored for Vendor's account pending Buyer's receipt of reasonable instructions as to their disposition. Vendor will bear all risk of loss associated with rejected/revoked Goods and will promptly reimburse Buyer for all reasonable expenses and losses incurred by Buyer in connection therewith. If Buyer has reasonable grounds for insecurity as to Vendor's ability to perform hereunder, it may demand adequate assurance of performance and require a response to be received from Vendor within five (5) business days (which the parties agree is reasonable). If Vendor is unable to provide adequate assurance of due performance as determined by Buyer in its sole discretion, Buyer may immediately terminate this Order and any other Orders for like Goods.

Termination for Convenience: Buyer may without cause terminate this Order, in whole or in part, by written notice to Vendor. Upon receipt of said notice, Vendor shall immediately discontinue work under this Order, and shall take all steps necessary to terminate, upon terms satisfactory to Buyer, all existing orders or contracts for materials, facilities, or supplies which Vendor may have entered into in connection with this Order, as well as to preserve and protect work already in progress. Buyer's sole liability for termination under this Section shall be payment for work already completed or in progress, including raw materials at the time the notice of termination is issued, as evidenced by Vendor's written records, and only to the extent Vendor is unable to mitigate such amounts through the sale or other use of such work in accordance with the terms of this Order and Related Documents.

7. Disposal of Goods: No Goods rejected, returned, or remaining for any reason under this Order, whether or not such rejection is disputed by Vendor, shall be resold, distributed, or otherwise disposed of by Vendor unless all Trademarks, labels, tags and other indicia identifying Buyer shall have been first removed from the Goods, and properly disposed, including all packaging and boxes used with such Goods. Upon request Vendor shall provide a certificate from an officer of Vendor showing its compliance with this Section.

8. Buyer's Purchase Rights: Buyer's inclusion of the Goods in its offerings is expected to create enhanced demand for the Goods. If Vendor fails to timely deliver conforming Goods, or is otherwise in breach of this Order, Buyer may terminate this Order and shall have the right to manufacture and sell substitute Goods using alternate sources, regardless of any intellectual property rights Vendor may retain in the Goods. If Vendor retains any intellectual property rights in the Goods and within 36 months of the date of this Order is unable or unwilling to timely provide Buyer with conforming Goods in the quantities sought and at the price stipulated in the most recent Order for the Goods, or as otherwise agreed by the parties, then Vendor grants Buyer an irrevocable, royalty-free worldwide right and license, with the right to grant sublicenses, to manufacture and sell such quantities of the Goods using alternate sources, provided Buyer first purchases at a price no higher than the price set forth in the most recent Order those remaining quantities of the Goods readily available from Vendor. Notwithstanding the foregoing, Vendor hereby acknowledges that it is not relying upon Buyer in any way to make further purchases of the Goods from Vendor, that Buyer is not obligated to make any future purchases of the Goods from Vendor, and that nothing contained herein prohibits Buyer from placing other orders for the Goods from any third party.

9. Indemnification: Vendor agrees to indemnify, defend (with counsel approved by Buyer), compensate and hold harmless Buyer and its parent and affiliated corporations, and their respective directors, officers, shareholders, employees, agents, customers, successors and assigns from and against any claim, liability, loss, damage, penalty and expense (including reasonable attorney#s fees, other professional fees and other costs and expenses) relating to any Goods provided hereunder, whether arising before or after delivery, which involves or alleges any breach of Vendor#s representations and warranties to Buyer, personal injury or property damage, defective Goods or the failure of the Goods to otherwise comply with any express or implied warranties of Vendor, the purchase, sale or use of the Goods, any infringement, or alleged infringement of any patent, copyright, trade dress, trade secret, trademark, or the like connected with the Goods, except for designs provided by Buyer; and any negligent or wrongful act or omission by Vendor, its employees, subcontractors, or agents. In any proceeding brought by a third party against Buyer in connection with the Goods, Vendor agrees to submit to the personal jurisdiction of the court or agency in which such proceeding is brought, and expressly and unconditionally waives any rights to the contrary which are granted or reserved by law. The obligations of indemnity set forth above are not subject to any limitation of liability contained herein, and are provided as a material inducement to Buyer entering into this Order. Vendor shall diligently and in good faith perform its obligations under this Section 9, including, without limitation, keeping Buyer timely informed regarding all material aspects of its defense and counterclaim. If Vendor fails to diligently or satisfactorily assume and pursue the defense of Buyer as required under this Order, Vendor shall reimburse Buyer for Buyer#s defense through separate counsel chosen and directed by Buyer.

10. Force Majeure: Discontinuance of or substantial interference with Buyer's business in whole or in part, by reason of fire, flood, earthquake, tempest, labor dispute, war, act of God, embargo, civil commotion, governmental regulation, terrorist attack, or cause beyond Buyer's control, will give Buyer the option of canceling all or any part of undelivered Orders or unfilled parts hereof without penalty or premium.

11. Assignment: This Order, and any rights and obligations hereunder, is personal to Vendor, and Vendor may not assign, sublicense or transfer such rights and obligations without the prior written consent of Buyer (which consent Buyer may withhold in its sole discretion). Any consent to an assignment or delegation shall not release Vendor from its obligations and liabilities under this Order, nor shall any such consent be deemed consent to further assignments or delegations. Any attempted assignment or delegation in violation of this Section shall be null and void. Buyer shall have the right, at its sole option and at any time and for any reason whatsoever, assign this Order and all Related Documents to a subsidiary, a parent or a subsidiary of a parent.

12. Record Keeping: Vendor agrees to maintain, and to require its suppliers to maintain, for a period of at least five (5) years (or longer period if specified by Buyer or required pursuant to applicable Laws and Regulations) following delivery of Goods to Buyer, all information and physical specimens relating to the Goods, or their design, development, production and sale ("Records"). Buyer shall have the right, without notice, to conduct audits and inspections and to copy Vendor#s information relating to the manufacture, shipment, and sale of the Goods, including any and all facilities of Vendor#s suppliers relating to the Goods, or where any item bearing Buyer#s Trademark is manufactured, handled or located.

13. Confidentiality: This Order and accompanying documents, including all designs of Goods and their specifications, shall be deemed Confidential Information. Vendor agrees to hold all such information in confidence and not disclose the same to any third party, or use for any purpose other than the performance of its obligations hereunder. Vendor shall not disclose the existence or contents of this Order, or its relationship with Buyer, without Buyer's prior written consent. Vendor will not display the Goods in any public exhibition, retail location, or catalog, advertisement, or other publication without Buyer's prior written consent. Vendor shall not use Buyer#s name or any Trademark of Buyer in any advertising, promotion, press release, or other publicity without Buyer#s prior written consent.

14. Governing Law and Jurisdiction: This Agreement will be governed by and construed in accordance with the local laws of the State of Idaho, USA, without reference to its conflicts of laws principles. Vendor consents to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in Bonner or Kootenai Counties, Idaho, USA for all purposes related to this Order. To the extent permitted by applicable law, the Parties hereby waive the right to a trial by jury in any action, proceeding or counterclaim arising out of, or in any way connected with, this Order. The U. N. Convention on Contracts for the International Sale of Goods shall have no application to this Order or actions arising hereunder or contemplated hereby. This prevailing party in any demand or dispute arising hereunder will be entitled to recover from the other Party the costs of resolving the dispute, including reasonable attorney#s fees and court costs.

15. Remedies: No remedy conferred by any provision of this Order is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and in addition to every other remedy hereunder, or now or hereafter existing, at law, in equity, by statute, or otherwise. No act or omission will be deemed to be a waiver of any rights hereunder unless such waiver is in writing and signed by Buyer. A waiver with reference to one provision or event will not be construed as continuing or as a waiver to any subsequent provision or event. The Parties agree that a breach by Vendor of Sections 4, 8, 11, 12 and 13 is likely to give rise to irreparable injury to Buyer for which it will have no adequate remedy at law. Accordingly, in the event of any actual or threatened breach of such Sections by Vendor, Buyer shall be entitled to obtain injunctive relief, including specific performance, against the breaching Party in addition to all other remedies available to it at law or in equity, all without need to post any bond or security of any nature.

16. Survival: The respective rights and obligations of the Parties under Sections 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, and 15 shall survive termination hereof and shall remain in full force and effect.

17. Severability: Should any of the provisions of this Order be held to be invalid or unenforceable, such provision will be reformed to the extent necessary to be valid and enforceable and such holding will not affect the validity of all other provisions.

18. Direct or Indirect Subsidiaries of Coldwater Creek Inc. include: Coldwater Creek US Inc., Coldwater Creek Merchandising & Logistics Inc., and Coldwater Creek The Spa Inc.

Revised 09/18/2009

# Exhibit C

# Exhibit C

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CWC claim amount summary | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | Invoice No. | CR Date | CPO# | Amount USD | Due Date | ETD Date | ETA Date | HBL# | Actual Arrival Date | CWC Pick Up Container Date |
| 4 | S140033 | 03-Jan-2014 | 5100670396 | 8,458.92 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 5 | S140034 | 03-Jan-2014 | 5100670398 | 4,229.46 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 6 | S140035 | 03-Jan-2014 | 5100677508 | 8,004.25 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 7 | S140036 | 03-Jan-2014 | 5100681107 | 126,301.87 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 8 | S140037 | 03-Jan-2014 | 5100681111 | 8,140.20 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 9 | S140038 | 03-Jan-2014 | 5100673086 | 4,652.00 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 10 | S140039 | 03-Jan-2014 | 5100670397 | 4,213.20 | 17-Feb-2014 | 06-Jan-2014 | 03-Feb-2014 | HKG2464364 | 02-Feb-2014 | 04-Feb-2014 |
| 11 | S140048 | 03-Jan-2014 | 5100677505 | 38,192.13 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 12 | S140049 | 03-Jan-2014 | 5100670399 | 8,630.16 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 13 | S140050 | 03-Jan-2014 | 5100670400 | 15,716.35 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 14 | S140051 | 03-Jan-2014 | 5100670401 | 6,779.01 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 15 | S140052 | 03-Jan-2014 | 5100671348 | 8,445.90 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 16 | S140053 | 03-Jan-2014 | 5100681156 | 6,676.04 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 17 | S140054 | 03-Jan-2014 | 5100673151 | 9,269.68 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 18 | S140055 | 03-Jan-2014 | 5100681155 | 4,344.04 | 17-Feb-2014 | 09-Jan-2014 | 06-Feb-2014 | HKG2464311 | 07-Feb-2014 | 10-Feb-2014 |
| 19 | S140133 | 09-Jan-2014 | 5100669354 | 6,366.24 | 23-Feb-2014 | 13-Jan-2014 | 07-Feb-2014 | SGN1225543 | 05-Feb-2014 | 17-Feb-2014 |
| 20 | S140109 | 10-Jan-2014 | 5100681150 | 37,529.79 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464789 | 20-Feb-2014 | 24-Feb-2014 |
| 21 | S140110 | 10-Jan-2014 | 5100679198 | 5,855.00 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464789 | 20-Feb-2014 | 24-Feb-2014 |
| 22 | S140111 | 10-Jan-2014 | 5100679199 | 85,661.16 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464789 | 20-Feb-2014 | 24-Feb-2014 |
| 23 | S140112 | 10-Jan-2014 | 5100679187 | 87,443.89 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464789 | 20-Feb-2014 | 24-Feb-2014 |
| 24 | S140113 | 10-Jan-2014 | 5100679192 | 5,952.12 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464789 | 20-Feb-2014 | 24-Feb-2014 |
| 25 | S140219 | 10-Jan-2014 | 5100671777 | 21,542.43 | 24-Feb-2014 | 16-Jan-2014 | 12-Feb-2014 | HKG2464853 | 20-Feb-2014 | 23-Feb-2014 |
| 26 | S140220 | 10-Jan-2014 | 5100680744 | 5,120.70 | 24-Feb-2014 | 16-Jan-2014 | 13-Feb-2014 | HKG2464853 | 20-Feb-2014 | 23-Feb-2014 |
| 27 | S140082 | 11-Jan-2014 | 5100678743 | 31,849.31 | 25-Feb-2014 | 11-Jan-2014 | 12-Jan-2014 | By Air | 13-Jan-2014 | 14-Jan-2014 |
| 28 | S140274 | 15-Jan-2014 | 5100680307 | 8,329.83 | 01-Mar-2014 | 20-Jan-2014 | 17-Feb-2014 | HKG2465574 | 20-Feb-2014 | 21-Feb-2014 |
| 29 | S140275 | 15-Jan-2014 | 5100680308 | 19,954.52 | 01-Mar-2014 | 20-Jan-2014 | 17-Feb-2014 | HKG2465574 | 20-Feb-2014 | 21-Feb-2014 |
| 30 | S142276 | 15-Jan-2014 | 5100674049 | 28,537.80 | 01-Mar-2014 | 20-Jan-2014 | 17-Feb-2014 | HKG2465574 | 20-Feb-2014 | 21-Feb-2014 |
| 31 | S140277 | 15-Jan-2014 | 5100680746 | 14,057.00 | 01-Mar-2014 | 20-Jan-2014 | 17-Feb-2014 | HKG2465574 | 20-Feb-2014 | 21-Feb-2014 |
| 32 | S140173 | 16-Jan-2014 | 5100682513 | 32,093.99 | 02-Mar-2014 | 19-Jan-2014 | 20-Jan-2014 | By Air | 21-Jan-2014 | 22-Jan-2014 |
| 33 | S140202 | 22-Jan-2014 | 5100681503 | 110,578.48 | 08-Mar-2014 | 25-Jan-2014 | 26-Jan-2014 | By Air | 27-Jan-2014 | 28-Jan-2014 |
| 34 | S140210 | 23-Jan-2014 | 5100671333 | 5,074.99 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 35 | S140211 | 23-Jan-2014 | 5100681160 | 3,589.42 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 36 | S140212 | 23-Jan-2014 | 5100679310 | 6,701.04 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |

|    | A | B | C | D | E | F | G | H | I | J |
|----|---|---|---|---|---|---|---|---|---|---|
| 3 | Invoice No. | CR Date | CPO# | Amount USD | Due Date | ETD Date | ETA Date | HBL# | Actual Arrival Date | CWC Pick Up Container Date |
| 37 | S140213 | 23-Jan-2014 | 5100680863 | 38,042.25 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 38 | S140214 | 23-Jan-2014 | 5100677509 | 7,413.65 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 39 | S140215 | 23-Jan-2014 | 5100677506 | 47,321.11 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 40 | S140216 | 23-Jan-2014 | 5100670402 | 8,095.60 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 41 | S140217 | 23-Jan-2014 | 5100670403 | 5,905.05 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 42 | S140218 | 23-Jan-2014 | 5100681108 | 49,305.82 | 09-Mar-2014 | 31-Jan-2014 | 28-Feb-2014 | HKG2467772 | 09-Mar-2014 | 09-Mar-2014 |
| 43 | S140278 | 23-Jan-2014 | 5100669347 | 29,357.82 | 09-Mar-2014 | 27-Jan-2014 | 17-Feb-2014 | SGN1235100 | 18-Feb-2014 | 04-Mar-2014 |
| 44 | S140229 | 24-Jan-2014 | 5100681504 | 113,556.50 | 10-Mar-2014 | 25-Jan-2014 | 26-Feb-2014 | SGN1235100 | 18-Feb-2014 | 04-Mar-2014 |
| 45 | S141230 | 24-Jan-2014 | 5100686293 | 1,729.00 | 10-Mar-2014 | 25-Jan-2014 | 26-Jan-2014 | By Air | 27-Jan-2014 | 28-Jan-2014 |
| 46 | S140231 | 24-Jan-2014 | 5100686292 | 2,048.20 | 10-Mar-2014 | 25-Jan-2014 | 26-Jan-2014 | By Air | 27-Jan-2014 | 28-Jan-2014 |
| 47 | S140311 | 24-Jan-2014 | 5100678772 | 79,065.30 | 10-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467874 | 09-Mar-2014 | 09-Mar-2014 |
| 48 | S140312 | 24-Jan-2014 | 5100678774 | 6,089.70 | 10-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467874 | 09-Mar-2014 | 09-Mar-2014 |
| 49 | S140288 | 27-Jan-2014 | 5100685042 | 14,600.20 | 13-Mar-2014 | 28-Jan-2014 | 29-Jan-2014 | By Air | 30-Jan-2014 | 31-Jan-2014 |
| 50 | S140297 | 11-Feb-2014 | 5100671779 | 288.48 | 28-Mar-2014 | 12-Feb-2014 | 13-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 51 | S140298 | 11-Feb-2014 | 5100678771 | 76.90 | 28-Mar-2014 | 12-Feb-2014 | 13-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 52 | S140299 | 12-Feb-2014 | 5100682012 | 92.76 | 29-Mar-2014 | 13-Feb-2014 | 14-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 53 | S140318 | 12-Feb-2014 | 5100685041 | 98.40 | 29-Mar-2014 | 12-Feb-2014 | 13-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 54 | S140319 | 12-Feb-2014 | 5100682009 | 126.64 | 29-Mar-2014 | 12-Feb-2014 | 13-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 55 | S140320 | 12-Feb-2014 | 5100682010 | 128.06 | 29-Mar-2014 | 12-Feb-2014 | 13-Feb-2014 | By Air | 14-Feb-2014 | 15-Feb-2014 |
| 56 | S140279 | 23-Jan-2014 | 5100669355 | 6,343.80 | 09-Mar-2014 | 27-Jan-2014 | 17-Feb-2014 | SGN1235100 | 18-Feb-2014 | 04-Mar-2014 |
| 57 | S140307 | 24-Jan-2014 | 5100682531 | 95,004.95 | 10-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467442 | 07-Mar-2014 | 10-Mar-2014 |
| 58 | S140309 | 24-Jan-2014 | 5100673172 | 28,537.80 | 10-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467442 | 07-Mar-2014 | 10-Mar-2014 |
| 59 | S140310 | 24-Jan-2014 | 5100674084 | 7,121.40 | 10-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467442 | 07-Mar-2014 | 10-Mar-2014 |
| 60 | S140337 | 25-Jan-2014 | 5100682530 | 93,951.93 | 11-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467780 | 07-Mar-2014 | 10-Mar-2014 |
| 61 | S140338 | 25-Jan-2014 | 5100682532 | 9,188.97 | 11-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467780 | 07-Mar-2014 | 10-Mar-2014 |
| 62 | S140339 | 25-Jan-2014 | 5100685039 | 7,004.72 | 11-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467780 | 07-Mar-2014 | 10-Mar-2014 |
| 63 | S140340 | 25-Jan-2014 | 5100685042 | 52,160.79 | 11-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467780 | 07-Mar-2014 | 10-Mar-2014 |
| 64 | S140308 | 03-Feb-2014 | 5100682533 | 9,291.83 | 20-Mar-2014 | 03-Feb-2014 | 03-Mar-2014 | HKG2467442 | 07-Mar-2014 | 10-Mar-2014 |
| 65 | S140313 | 13-Feb-2014 | 5100671336 | 79,521.82 | 30-Mar-2014 | 22-Feb-2014 | 22-Mar-2014 | HKG2468851 | 20-Mar-2014 | 23-Mar-2014 |
| 66 | S140314 | 13-Feb-2014 | 5100671345 | 11,772.11 | 30-Mar-2014 | 22-Feb-2014 | 22-Mar-2014 | HKG2468851 | 20-Mar-2014 | 23-Mar-2014 |
| 67 | S140315 | 13-Feb-2014 | 5100671343 | 9,721.67 | 30-Mar-2014 | 22-Feb-2014 | 22-Mar-2014 | HKG2468851 | 20-Mar-2014 | 23-Mar-2014 |
| 68 | S140316 | 13-Feb-2014 | 5100681109 | 46,384.23 | 30-Mar-2014 | 22-Feb-2014 | 22-Mar-2014 | HKG2468851 | 20-Mar-2014 | 23-Mar-2014 |
| 69 | S140317 | 13-Feb-2014 | 5100681113 | 7,972.77 | 30-Mar-2014 | 22-Feb-2014 | 22-Mar-2014 | HKG2468851 | 20-Mar-2014 | 23-Mar-2014 |
| 70 | S140302 | 14-Feb-2014 | 5100681502 | 174.74 | 31-Mar-2014 | 14-Feb-2014 | 15-Feb-2014 | By Air | 16-Feb-2014 | 17-Feb-2014 |
| 71 | S140303 | 14-Feb-2014 | 510068656 | 105.52 | 31-Mar-2014 | 14-Feb-2014 | 15-Feb-2014 | By Air | 15-Feb-2014 | 17-Feb-2014 |

|  | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | Invoice No. | CR Date | CPO# | Amount USD | Due Date | ETD Date | ETA Date | HBL# | Actual Arrival Date | CWC Pick Up Container Date |
| 72 | S140304 | 14-Feb-2014 | 5100681501 | 169.18 | 31-Mar-2014 | 14-Feb-2014 | 15-Feb-2014 | By Air | 15-Feb-2014 | 17-Feb-2014 |
| 73 | S140305 | 14-Feb-2014 | 5100682655 | 104.10 | 31-Mar-2014 | 14-Feb-2014 | 15-Feb-2014 | By Air | 15-Feb-2014 | 17-Feb-2014 |
| 74 | S140334 | 19-Feb-2014 | 5100681508 | 6,198.98 | 05-Apr-2014 | 26-Feb-2014 | 26-Mar-2014 | HKG2469470 | 17-Mar-2014 | 25-Mar-2014 |
| 75 | S140335 | 19-Feb-2014 | 5100679197 | 3,425.12 | 05-Apr-2014 | 26-Feb-2014 | 26-Mar-2014 | HKG2469470 | 17-Mar-2014 | 25-Mar-2014 |
| 76 | S140336 | 19-Feb-2014 | 5100679196 | 3,481.94 | 05-Apr-2014 | 26-Feb-2014 | 26-Mar-2014 | HKG2469470 | 17-Mar-2014 | 25-Mar-2014 |
| 77 | S140331 | 19-Feb-2014 | 5100678744 | 47,260.28 | 05-Apr-2014 | 20-Feb-2014 | 21-Feb-2014 | By Air | 22-Feb-2014 | 23-Feb-2014 |
| 78 | S140377 | 20-Feb-2014 | 5100674085 | 7,195.80 | 06-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | HKG2469506 | 17-Mar-2014 | 25-Mar-2014 |
| 79 | S140378 | 20-Feb-2014 | 5100669360 | 21,400.80 | 06-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | HKG2469506 | 17-Mar-2014 | 25-Mar-2014 |
| 80 | S140379 | 20-Feb-2014 | 5100685040 | 6,863.04 | 06-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | HKG2469506 | 17-Mar-2014 | 25-Mar-2014 |
| 81 | S140380 | 20-Feb-2014 | 5100685043 | 32,607.41 | 06-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | HKG2469506 | 17-Mar-2014 | 25-Mar-2014 |
| 82 | S140422 | 20-Feb-2014 | 5100678773 | 24,539.90 | 06-Apr-2014 | 26-Feb-2014 | 16-Mar-2014 | HKG2469360 | 17-Mar-2014 | 25-Mar-2014 |
| 83 | S140423 | 20-Feb-2014 | 5100678775 | 9,781.40 | 06-Apr-2014 | 26-Feb-2014 | 16-Mar-2014 | HKG2469360 | 17-Mar-2014 | 25-Mar-2014 |
| 84 | S140332 | 20-Feb-2014 | 5100681507 | 8,615.60 | 06-Apr-2014 | 20-Feb-2014 | 21-Feb-2014 | By Air | 22-Feb-2014 | 23-Feb-2014 |
| 85 | S140365 | 21-Feb-2014 | 5100678779 | 9,205.26 | 07-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | SGN1246376 | 17-Mar-2014 | 25-Mar-2014 |
| 86 | S140366 | 21-Feb-2014 | 5100678776 | 38,646.18 | 07-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | SGN1246376 | 17-Mar-2014 | 25-Mar-2014 |
| 87 | S140367 | 21-Feb-2014 | 5100678778 | 6,602.46 | 07-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | SGN1246376 | 17-Mar-2014 | 25-Mar-2014 |
| 88 | S140368 | 21-Feb-2014 | 5100678777 | 25,671.90 | 07-Apr-2014 | 24-Feb-2014 | 16-Mar-2014 | SGN1246376 | 17-Mar-2014 | 25-Mar-2014 |
| 89 | S140375 | 27-Feb-2014 | 5100681505 | 32,284.80 | 13-Apr-2014 | 02-Mar-2014 | 03-Mar-2014 | By Air | 04-Mar-2014 | 05-Mar-2014 |
| 90 | S140376 | 27-Feb-2014 | 5100681506 | 32,122.20 | 13-Apr-2014 | 02-Mar-2014 | 03-Mar-2014 | By Air | 04-Mar-2014 | 05-Mar-2014 |
| 91 | S140391 | 27-Feb-2014 | 5100680912 | 61,603.48 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 92 | S140392 | 27-Feb-2014 | 5100680913 | 7,931.73 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 93 | S140393 | 27-Feb-2014 | 5100682514 | 32,728.67 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 94 | S140394 | 27-Feb-2014 | 5100682516 | 24,170.47 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 95 | S140395 | 27-Feb-2014 | 5100680867 | 10,384.71 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 96 | S140396 | 27-Feb-2014 | 5100680865 | 25,222.19 | 13-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 97 | S140436 | 27-Feb-2014 | 5100679276 | 35,224.20 | 13-Apr-2014 | 03-Mar-2014 | 02-Apr-2014 | HKG2470983 | 03-Apr-2014 | 04-Apr-2014 |
| 98 | S140437 | 28-Feb-2014 | 5100680896 | 13,280.99 | 14-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470376 | 03-Apr-2014 | 04-Apr-2014 |
| 99 | S140438 | 28-Feb-2014 | 5100680899 | 10,658.50 | 14-Apr-2014 | 07-Mar-2014 | 03-Apr-2014 | HKG2470376 | 03-Apr-2014 | 04-Apr-2014 |
| 100 | S140433 | 07-Mar-2014 | 5100684557 | 88.58 | 21-Apr-2014 | 08-Mar-2014 | 12-Mar-2014 | By Air | 13-Mar-2014 | 14-Mar-2014 |
| 101 | S140434 | 07-Mar-2014 | 5100684558 | 88.58 | 21-Apr-2014 | 08-Mar-2014 | 12-Mar-2014 | By Air | 13-Mar-2014 | 14-Mar-2014 |
| 102 | S140461 | 07-Mar-2014 | 5100682014 | 78,532.35 | 21-Apr-2014 | 07-Mar-2014 | 28-Mar-2014 | HKG2470120 | 31-Mar-2014 | 01-Apr-2014 |
| 103 | S140462 | 07-Mar-2014 | 5100682017 | 7,967.70 | 21-Apr-2014 | 07-Mar-2014 | 28-Mar-2014 | HKG2470120 | 31-Mar-2014 | 01-Apr-2014 |
| 104 | S140419 | 13-Mar-2014 | 5100683565 | 15,526.88 | 27-Apr-2014 | 16-Mar-2014 | 01-Apr-2014 | HKG2472318 | 01-Apr-2014 | 15-Apr-2014 |
| 105 | S140463 | 13-Mar-2014 | 5100686531 | 7,159.43 | 27-Apr-2014 | 09-Mar-2014 | 10-Mar-2014 | By Air | 11-Mar-2014 | 12-Mar-2014 |

|     | A | B | C | D | E | F | G | H | I | J |
|-----|---|---|---|---|---|---|---|---|---|---|
| 3 | Invoice No. | CR Date | CPO# | Amount USD | Due Date | ETD Date | ETA Date | HBL# | Actual Arrival Date | CWC Pick Up Container Date |
| 106 | S140464 | 13-Mar-2014 | 5100686532 | 7,848.20 | 27-Apr-2014 | 09-Mar-2014 | 10-Mar-2014 | By Air | 11-Mar-2014 | 12-Mar-2014 |
| 107 | | | Total(USD): | 2,300,484.42 | | | | | | |